YEAGER, APPELLANT, *v.* LOCAL UNION 20, TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, ET AL., APPELLEES.

[Cite as Yeager *v.* Local Union 20 (1983), 6 Ohio St. 3d 369.]

(No. 82-1424—Decided August 31, 1983.)

370

*Murray & Murray Co., L.P.A., Mr. Dennis E. Murray* and *Mr. Kirk J. Delli Bovi,* for appellant.

*Gallon, Kalniz & Iorio Co., L.P.A., Mr. Jack Gallon* and *Ms. Tobie Braverman,* for appellees Local Union 20 et al.

Messrs. *Lydy, Moan & Douglas* and *Mr. Thomas G. Douglas,* for appellees Toledo Area PROD et al.

*Mr. Michael J. Goldberg* and *Mr. Jack Kilroy,* for appellee PROD.

SWEENEY, J. The first issue before this court is whether summary judgment was properly granted upon the trial court's determination that the defendants-appellees' actions were conducted within the context of a labor dispute.

Appellant contends that the trial court erred in characterizing the picketing incident as a labor dispute because neither TAP nor PROD had any labor agreement with BFI. Continuing, appellant argues that the picketing incident was a result of personal animosity against him and not over working conditions. Furthermore, appellant submits that if either the March 1978 or the June 1979 incident was not part of a labor dispute, his cause of action for defamation is not subject to the "actual malice" standard enunciated in *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254.

The term "labor dispute" is defined in Section 152 (9), Title 29, U.S. Code, as follows:

"The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether the disputants stand in the proximate relation of employer and employee.*" (Emphasis added.)

The question of whether certain conduct constitutes a labor dispute is necessarily a question of law which a court must answer on the basis of the whole record. *Hansbrouck* v. *Sheet Metal Workers Local 232* (C.A. 9, 1978), 586 F. 2d 691, 694. Therefore, we believe that the court of appeals was correct in affirming the trial court because this is an issue for the court, not the jury, to decide and the record in the instant case convinces us that the activity alleged does constitute a labor dispute as defined by federal law. Moreover, such concerted activity as took place outside BFI's plant, does not have to be undertaken exclusively by a labor union in order to be protected under the federal labor laws. The National Labor Relations Board and courts have recognized that concerted activity undertaken by or on behalf of PROD is protected activity. See, *e.g., Roadway Express, Inc.* (1978), 239 NLRB 653.

Once it has been determined that concerted activity constitutes a labor dispute, the United States Supreme Court has held that an action for defamation within this context must be adjudicated under the *New York Times Co.* v. *Sullivan* "actual malice" standard. *Linn, supra.* In this regard, the plaintiff must prove that the defendants did not merely fail to investigate the truth of their publication, but that they actually entertained serious doubts about its truth before publishing it. *St. Amant* v. *Thompson* (1968), 390 U.S. 727, 731.

In addition to his other arguments, appellant submits that the lower courts erred in finding that the statements published on the handbills were

not actionable, and that the court of appeals erred in applying an "innocent construction rule" on the alleged defamatory statements.

With respect to these contentions, we find that this court has stated that it is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not. *Bigelow* v. *Brumley* (1941), 138 Ohio St. 574, 590 [21 O.O. 471].

In relation to this, the court of appeals below followed the reasoning of several federal diversity opinions in Ohio which adopted the "innocent construction rule." According to this rule, if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted. See, *e.g.*, *England* v. *Automatic Canteen Co.* (C.A. 6, 1965), 349 F. 2d 989. In this regard, we note that various courts have had occasion to examine language similar to that allegedly used by appellees in the instant action, and have found that such language is protected as a matter of law when used in a labor dispute or in a case involving a public figure. Thus, words such as "gestapo-like," "Gestapo tactics," and "fascist" have been found to be protected. See *Cafeteria Employees Union Local 302* v. *Angelos* (1943), 320 U.S. 293; *Buckley* v. *Littell* (C.A. 2, 1976), 539 F. 2d 882, certiorari denied (1977), 429 U.S. 1062; and *Schy* v. *Hearst Publishing Co.* (C.A. 7, 1953), 205 F. 2d 750. It is our view that even if we were to assume that the incidents in the case *sub judice* did not constitute a labor dispute, the language used is capable of different meanings; is mere hyperbole or rhetoric, and is an expression of opinion, not fact; and is protected. As was stated by the court of appeals below, "* * * [i]t is unreasonable to assume that any person reading the handbill or the signs would really believe that the [appellant] was literally a member of the Nazi Party, the Gestapo, the SS or was like Hitler in condoning or practicing genocide or other atrocities." Therefore, we affirm the court of appeals with respect to appellant's defamation cause of action.

In his next argument, appellant contends that the picketing and handbilling incident invaded his privacy by impugning his character under a "false light."

This court has recognized a cause of action for invasion of privacy in *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60]. However, this court has not recognized a cause of action for invasion of privacy under a "false light" theory of recovery. Under the facts of the instant case, we find no rationale which compels us to adopt the "false light" theory of recovery in Ohio at this time. As stated before, it is our view that the complained about language constitutes expressions of opinions, not facts. Even if appellant had styled his cause of action as an invasion of privacy alone, we find that the *Housh* syllabus does not support a theory of recovery such as this, under the facts of the case at bar.[1]

---

[1] The second paragraph of the *Housh* v. *Peth* syllabus provides as follows:

"An actionable invasion of the right of privacy is the unwarranted appropriation or exploita-

Appellant next argues that the appellees intentionally interfered with his employment relationship by engaging in the conduct which brought about this present action. Appellant cites the fact that he was terminated by BFI during the pendency of this appeal as supporting evidence for this contention. Appellees, on the other hand, argue that appellant has failed to establish any causal connection between the alleged incidents and his eventual dismissal from BFI, and we agree. As the court of appeals correctly pointed out, appellant's affidavit in this regard deals in conjecture and speculation. Additionally, there is no other independent evidence to show that appellant's fears or suspicions in this regard are well-founded. Accordingly, we affirm the appellate court's decision with respect to this cause of action.

Finally, appellant argues that the appellees' conduct caused him severe emotional distress, and that therefore, he should be permitted to state a cause of action for the intentional infliction of emotional distress. Appellees counter that the *Bartow* case precludes an action in Ohio for the intentional infliction of emotional distress; and that even if appellant suffered emotional distress, he cannot recover unless the conduct amounted to an assault, trespass, or invasion of privacy. It is the appellees' contention that even assuming that the incidents in question amounted to an assault, appellant is precluded from recovery because the applicable statute of limitations had expired prior to the commencement of the instant action.

Until today, Ohio was the only jurisdiction in this country that refused to recognize the independent tort of the intentional infliction of serious emotional distress.[2] The reasoning behind this refusal to recognize this cause of action was that " '[t]he damages sought to be recovered are too remote and speculative. The injury is more sentimental than substantial. Being easily simulated and hard to disprove, there is no standard by which it can be justly, or even approximately, compensated.' " *Bartow* v. *Smith, supra,* at 311.

In *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, this court held that a cause of action may be stated for the *negligent* infliction of serious emotional distress. Certainly, if protection must be afforded to individuals who are seriously injured emotionally through the negligence of another, there is no doubt that the case is stronger to allow recovery by one who is

tion of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

From this, we believe it is clear the appellant's cause of action does not encompass an actionable invasion of the right of privacy.

[2] See, Prosser, *infra,* at 56, footnote 81.

This court has, however, recognized an actionable form of emotional distress in cases involving, for example, minors and common carriers:

"Where one is in a situation in which he is entitled to protection from another, such as would be due to a guest from an innkeeper, to a patron from a theater, or to a passenger from a common carrier, he may recover for any injuries, including fright and terror, which result from a wilful breach of duty, insult or unlawful treatment. *Cincinnati Northern Traction Co.* v. *Rosnagle, an Infant* [(1911)], 84, Ohio St., 310 * * *." *Bartow* v. *Smith, supra,* at 306.

similarly injured intentionally by another. We believe that the time is now appropriate for this court to recognize a cause of action for the intentional infliction of serious emotional distress, and therefore, *Bartow v. Smith, supra,* is expressly overruled.

Our prior decisions in *Schultz, supra,* and *Paugh v. Hanks* (1983), 6 Ohio St. 3d 72, have explored the reasoning behind the unwillingness of courts to recognize the validity of an action grounded on invasion of emotional tranquillity alone, along with the apprehensions of courts concerning the consequences in allowing recovery for emotional distress. Suffice it to say that we have rejected the skeptical approach embodied in the past cases in favor of conforming the law to the realities of modern medical and psychiatric advancements. *Paugh, supra.*

Our approach in identifying the scope of a cause of action pleading intentional infliction of emotional distress is similar in some respects to that which we set forth in *Paugh, supra.* Thus, we hold that in order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious. As Dean Prosser reasoned in his learned treatise, "[i]t would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control. 'Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be.' But this is a poor reason for denying recovery for any genuine, serious mental injury." Prosser, Law of Torts (4 Ed. 1971) 51, Section 12 (quoting Magruder, Mental and Emotional Disturbance in the Law of Torts [1936], 49 Harv. L. Rev. 1033, 1035).

The standard we adopt in our recognition of the tort of intentional infliction of serious emotional distress is succinctly spelled out in the Restatement as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement of the Law 2d, Torts (1965) 71, Section 46 (1).

This approach discards the requirement that intentionally inflicted emotional distress be "parasitic" to an already recognized tort cause of action as in *Bartow.* It also rejects any requirement that the emotional distress manifest itself in the form of some physical injury. This approach is in accord with the well-reasoned analysis of a substantial number of jurisdictions throughout the nation. See Prosser, *supra,* at 59, footnote 20.

With respect to the requirement that the conduct alleged be "extreme and outrageous," we find comment *d* to Section 46 of the Restatement, *supra,* at 73, to be instructive in describing this standard:

"* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a

degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *"

Our recognition of the tort of intentional infliction of serious emotional distress compels us to reject the appellees' argument that appellant's action is barred by the applicable statute of limitations.

R.C. 2305.09 provides in part:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"* * *

"(D)  For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code. * * *"

Since the tort of intentional infliction of serious emotional distress is not listed in any of the sections referred to in R.C. 2305.09, the applicable statute of limitations for this cause of action will be four years. Under the facts of the instant case, we find that appellant's action has been timely brought.

In reversing the court of appeals on the grounds that a cause of action may be stated for the intentional infliction of serious emotional distress, we believe that appellant's action is not precluded because the events alleged took place within the context of a "labor dispute." The United States Supreme Court has unanimously held that the National Labor Relations Act does not preempt a state's recognition of a cause of action for intentional infliction of emotional distress. *Farmer* v. *United Brotherhood of Carpenters and Joiners of America* (1977), 430 U.S. 290.

Based upon all of the foregoing, we affirm the judgment of the court of appeals in part with respect to appellant's causes of action for defamation, invasion of privacy and intentional interference with an employment relationship. We reverse the court of appeals in part and remand the cause to the trial court for further proceedings on the cause of action for intentional in-

fliction of emotional distress arising from the alleged incident in appellant's office on March 31, 1978.

*Judgment accordingly.*

CELEBREZZE, C.J., W. BROWN, LOCHER, C. BROWN and J. P. CELE-BREZZE, JJ., concur.

HOLMES, J., concurs in part.

HOLMES, J., concurring. I concur in that part of the syllabus which states that:

"One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

However, I do not agree with the need to overrule *Bartow* v. *Smith* (1948), 149 Ohio St. 301 [37 O.O. 10], in that, when analyzed, *Bartow* would in essence be in agreement with the opinion *sub judice.* I so noted in my concurrence in *Baker* v. *Shymkiv* (1983), 6 Ohio St. 3d 151. My position here is in accord with my commentary in *Baker* v. *Shymkiv,* which was as follows:

"This court, in *Bartow* v. *Smith* (1948), 149 Ohio St. 301 [37 O.O. 10], although denying recovery for emotional shock occasioned by the use of vile language against the plaintiff which was found to be mere nonactionable words in the absence of threat, recognized that where certain protected rights were intentionally violated, a recovery for mental shock and resulting injury could be had. The protected rights set forth in the syllabus of *Bartow* v. *Smith* were the right not to be slandered, and not to be subject to words or action constituting an assault or threat, or which put a person in fear and terror."

Accordingly, I agree that the law has countenanced actions for emotional shock occasioned by intentional and malicious words or actions which constitute an assault or threat which put a person in fear and terror.

Here, the record shows that there was evidence that the defendants did intentionally and maliciously express certain threats which put the plaintiff in fear and terror. There was evidence not only to the effect that the defendants had threatened the plaintiff with injury, but also that the safety of the plaintiff's family had been maliciously threatened by these defendants. All of such evidence would present a cause of action against these defendants and, if proven, would be the basis for a recovery for serious emotional distress. Therefore, the defendants' motions for summary judgment should not have been granted by the trial court on this phase of the case. The judgment of the court of appeals as to this should be reversed. I also join in the affirmance of the judgment of the court of appeals as to the other issues.