GLICKSTEIN, Judge,
concurring specially.
This is a case wherein appellee established intentional infliction of emotional distress and was awarded compensatory damages of $50,000 and punitive damages of $50,000.
The facts show that appellee, Angela Khorozian, went to the Jefferson Ward store on Okeechobee Boulevard in West Palm Beach to make some purchases. Among those purchases, appellee bought a fishing net, which seemed to be low priced. She asked the cashier if the price of the net was correct. The cashier said that it was. Appellee paid for her merchandise and went home. Shortly thereafter, appellee returned to Jefferson’s to make additional purchases. She went to the same checkout cashier. The cashier asked her, “Weren’t you here a little while ago?” When appellee replied in the affirmative, the cashier told appellee that her register was closed, and left the station. Appellee went to another cashier, paid for her merchandise, and left. While walking toward her truck, four people chased after her: the first cashier, a man in a uniform, another woman and another man. They asked her where the fishing net was. They called her a bitch, a “spic” and a thief. They surrounded her, forcing her to remain seated on the bumper of her truck. They told her to shut up. One woman pushed her. The uniformed man, acting on the woman’s directions, grabbed appellee and dragged her toward the store. The uniformed man asked appellee whether she had ever spent any time in jail, and said that she would do so that night. These people threatened to “put a record on her.” A crowd of people gathered to witness this incident, which lasted some 30 to 45 minutes, and which only ceased when appellee asked to call a lawyer.
An enlightening statement of the law upon this subject that bears repeating here was recently made in Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers, 6 Ohio St.3d 369, 374-75, 453 N.E.2d 666, 671 (1983):
Thus, we hold that in order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious. As Dean Pros-ser reasoned in his learned treatise, “[i]t would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control. ‘Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be.’ But this is a poor reason for denying recovery for any genuine, serious mental injury.” Prosser, Law of Torts (4 Ed.1971) 51, Section 12 (quoting Magruder, Mental and Emotional Disturbance in the Law of Torts [1936], 49 Harv.L.Rev. 1033, 1035).
The standard we adopt in our recognition of the tort of intentional infliction of serious emotional distress is succinctly *628 spelled out in the Restatement as follows: “One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.” Restatement of the Law 2d, Torts (1965) 71, Section 46(1).
This approach discards the requirement that intentionally inflicted emotional distress be “parasitic” to an already recognized tort cause of action as in Bartow [v. Smith (1948), 149 Ohio St. 301]. It also rejects any requirement that the emotional distress manifest itself in the form of some physical injury. This approach is in accord with the well-reasoned analysis of a substantial number of jurisdictions throughout the nation. See Prosser, supra, at 59, footnote 20.
With respect to the requirement that the conduct alleged be “extreme and outrageous,” we find comment d to section 46 of the Restatement, supra, at 73, to be instructive in describing this standard:
“ * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by ‘malice,’ or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, ‘Outrageous!’
“The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one’s feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *”