76 F.3d 379
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Earl V. HARTWIG, et al., Plaintiffs-Appellants,
v.
NATIONAL BROADCASTING CO, INC., Defendant-Appellee.
 No. 94-3879.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1996.
 
 1
 Before: MERRITT, Chief Judge; RYAN, Circuit Judge; and CLELAND, District Judge.*
 
 
 2
 CLELAND, District Judge.
 
 
 3
 The plaintiffs are the parents and sisters of Clayton Hartwig, a sailor who died in an explosion aboard the Navy Battleship U.S.S. Iowa on April 19, 1989. Their complaint alleged that NBC intentionally or recklessly inflicted emotional distress on them by broadcasting untrue information about Hartwig and the explosion on its NBC Nightly News program. The district court granted NBC's motion for summary judgment; we affirm.
 
 I.
 
 4
 Plaintiffs' complaint, which was removed from the Court of Common Pleas in Cuyahoga County, Ohio, on the basis of diversity jurisdiction, states only one count, Intentional Infliction of Emotional Distress, alleging that NBC broadcast untrue information about Hartwig and the explosion on its nightly news program on May 24, 1989, May 25, 1989, July 18, 1989, and October 22, 1991. Specifically, the defendant allegedly reported that Clayton Hartwig committed suicide by causing the explosion because he was despondent that a "special relationship" with a male shipmate had "gone sour." Plaintiffs allege that the defendant "reported that the Navy's investigators were convinced that the Decedent, Clayton Hartwig, was a 'troubled homosexual who took his own life.' " (JA 11, para. 12). The defendant also allegedly reported the contents of a statement made by a shipmate, which related an alleged conversation with Hartwig, in which "Hartwig explained that he could use a nine (9) volt battery and some kind of electrical ignition switch and a small timer to set off a bomb." (JA 12, para. 13). The plaintiffs allege that, at the time this report was broadcast, the defendant knew or should have known that the shipmate had recanted the statement. On October 17, 1991, the Chief of Naval Operations extended an apology to the family of Clayton Hartwig, stating that it was the official position of the U.S. Navy that the exact cause of the explosion could not be determined. On October 22, 1991, Fred Francis, a reporter for the defendant allegedly reported that the Navy "still believes" that Clayton Hartwig caused the explosion. The complaint avers that the defendant's publication of this information "caused the Plaintiffs intense and horrific emotional distress which greatly compounded and impeded the grieving process they were already undergoing due to the death of their son and brother." (JA 14, para. 23).
 
 
 5
 Though the allegations are in the nature of defamation, the complaint includes only a cause of action for intentional infliction of emotional distress. It appears that a claim for defamation would be barred by the applicable one-year statute of limitations, as well as by the common law rule against suits for "defamation of the dead."
 
 
 6
 The complaint was filed in December 1991 and was removed to federal court on January 9, 1992. On February 3, 1992, Defendant filed a motion to dismiss, and counsel agreed to stay discovery until the court ruled on the motion. This agreement was never approved by the court, and the discovery cutoff was never extended by order of the court. While the motion to dismiss was still pending, the case was transferred to the Honorable Thomas D. Lambros. On September 28, 1992, Judge Lambros denied the motion to dismiss. On November 23, 1992, the defendant filed a motion for summary judgment. Approximately one and a half years later, while the motion for summary judgment was still pending, the case was reassigned to the docket of the Honorable Lesley Brooks Wells, who granted the motion for summary judgment on July 18, 1994. The plaintiffs subsequently filed a motion for reconsideration and a motion for correction or modification of record, which were denied by Judge Wells.
 
 II.
 
 7
 Plaintiffs allege that the district court wrongly granted the defendant's motion for summary judgment; they assert that a genuine issue of material fact remains. Plaintiffs also argue that they were unfairly denied the opportunity to conduct discovery because neither Judge Lambros nor Judge Wells set a new discovery cutoff date after the case was transferred.
 
 
 8
 Plaintiffs' argument that the district court misapplied the summary judgment standard is based on a fundamental misunderstanding about the appropriate procedural standards to be applied in a diversity suit in federal court. Plaintiffs rely on Ohio cases for the proposition that averments in the complaint alone can defeat a motion for summary judgment. The Federal Rules of Civil Procedure, not the Ohio rules, apply in federal court, even when the court is sitting in diversity. Fed.R.Civ.P. 1 provides that the Federal Rules govern "all suits of a civil nature." Accordingly, Plaintiffs' reliance on Ohio law for the summary judgment standard is entirely misplaced. Furthermore, the Ohio cases cited by Plaintiffs predate the United States Supreme Court's landmark trilogy explaining the federal summary judgment standard, Anderson v. Liberty Lobby, 477 U.S. 242 (1986), Celotex Corp. v. Catrett, 477 U.S. 317 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Ohio subsequently adopted the federal standard. See Wing v. Anchor Media, Ltd., 570 N.E.2d 1095 (Ohio 1991). Fed.R.Civ.P. 56(e) specifically provides that parties opposing a motion for summary judgment may not rest upon the mere allegations in their pleading but must, by affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial.
 
 
 9
 Perhaps because the plaintiffs misunderstood the standard for summary judgment, they provided no evidence in support of an element of their case in opposition to the motion for summary judgment. The Ohio Supreme Court has held that, "in order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious." Yeager v. Local Union 20, 453 N.E.2d 666, 671 (Ohio 1983). Plaintiffs provided no affidavits, medical reports, expert opinion, or other evidence that they suffered serious emotional injury; instead, they rested on their mere allegations. Because the plaintiffs presented no proof of serious emotional distress, the defendants are entitled to summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 10
 Plaintiffs suggest that the district court wrongly denied them an opportunity to conduct discovery because neither of the two judges to which the case was reassigned issued an additional scheduling order after the discovery cutoff set by the first judge passed. This argument is entirely without merit. While the parties apparently agreed--without court approval--to suspend discovery pending resolution of the defendant's motion to dismiss, there is no indication that the plaintiffs were in any way barred from conducting discovery after the motion to dismiss was decided. There is no indication that the plaintiffs moved the court for an extension of the original discovery cutoff dates or that they raised the issue before the district court in their response to the summary judgment motion. Plaintiffs' failure to conduct adequate discovery is not reversible error.
 
 III.
 
 11
 The decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation