JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants Lou Gnezda and Joseph Cepik appeal from the July 8, 2003 rulings made by the trial court. When the trial court granted appellees' motion, it dismissed appellants' sole remaining count, civil liability for a criminal act, thereby dismissing the case. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I {¶ 2} Steven Veverka ("Veverka"), an off-duty village of Wakeman police officer, was working at a construction site in North Royalton. On February 23, 2000, North Royalton police officers Joseph Cepik ("Cepik") and Lou Gnezda ("Gnezda") arrived at the construction site. Cepik approached Veverka and started questioning him about his identity and purpose at the construction site.[1] Specifically, Cepik told Veverka that "police officers in Cleveland will `throw you in a hole' when an outsider works a construction project in their city."[2]
 {¶ 3} In addition, Cepik engaged in a discussion with the construction company foreman, Donald Caruso ("Caruso"), while at the site. Cepik admitted he gave Caruso a piece of paper with a sergeant's phone number on it and told him to call the sergeant if he needed outside hires.[3] After the incident, Police Chief Bican ("Bican") and officers Gnezda and Cepik argued about the incident. Bican wanted the officers to resign immediately; the officers did not agree with Bican's version of the facts. There are conflicting stories about exactly what transpired and how to best handle the situation. Pursuant to the collective bargaining agreement, the matter proceeded to binding arbitration.
 {¶ 4} Cepik's arbitration was conducted by Jonathan Klein ("Arbitrator Klein") who stated that, in his opinion, it was "sufficiently clear from the totality of the circumstances that the grievant intended to harass and intimidate Veverka on February 23, 2000. The grievant [Cepik] was undoubtedly disturbed by Veverka's presence at the construction site on the date due to his belief that a city police officer should have received Veverka's assignment."[4] "The grievant's [Cepik] statements to Veverka constitute both subtle and implied threats to Veverka's safety and livelihood."[5] "* * * Based upon the entire record, the arbitrator finds that the city satisfied its burden of proof that the grievant [Cepik] engaged in threatening and intimidating conduct unbecoming a police officer."[6]
 {¶ 5} In addition, Arbitrator Klein found that Cepik's conduct violated several sections of the police department's manual of operations, specifically Sections 2.06, 3.02, 3.12,3.17, 5.07, and 5.08 of the manual.[7] The arbitrator found that Cepik acted in a threatening and intimidating manner toward Veverka motivated by the desire to obtain work. Klein stated that "the grievant's conduct constitutes a violation of the public trust placed in law enforcement officers."[8] Cepik was suspended for 15 days without pay, was demoted to patrol officer for a period of one year, and was restricted from acting as officer-in-charge during this period. The arbitration regarding Gnezda was conducted by Arbitrator Nels Nelson ("Arbitrator Nelson"), who noted Gnezda's past work history in his opinion. Gnezda's previous employment record was unchallenged at the arbitration; however, it demonstrated that Gnezda received numerous written reprimands, counseling sessions, four suspensions, and was demoted in 1994.[9] After taking everything into account, Arbitrator Nelson gave Gnezda a ten-day suspension without pay and retained the ban on Gnezda serving as officer-in-charge or being eligible for promotion for a period of one year.[10]
 {¶ 6} In addition, the arbitrator noted that Gnezda improperly utilized LEADS. "The misuse of LEADS is a serious offense. It violates the Ohio Administrative Code and can cause problems with the state as well as raising the possibility of legal action against the city by a citizen. Such an offense justifies the imposition of severe discipline."[11] Ohio courts have also found the misuse of LEADS to violate several criminal code sections. See State of Ohio v. Violi (Dec. 29, 1995), Trumbull App. Nos. 94T-5053 and 94T-5059.
 {¶ 7} On August 15, 2001, Gnezda and Cepik filed a complaint against defendants-appellees the city of North Royalton and North Royalton Police Chief Paul Bican. The complaint alleged coercion and R.C. 2307.60 civil liability for a criminal act.[12]
Appellants voluntarily dismissed their complaint pursuant to Civ.R. 41(A) on April 16, 2002. On June 20, 2002, appellants filed their second complaint, alleging coercion, R.C. 2307.60
civil liability for a criminal act, and intentional infliction of emotional distress.[13] On August 12, 2002, appellees filed a motion for summary judgment, to which appellants filed their opposition on October 18, 2002.
 {¶ 8} On March 11, 2003, the trial court granted appellees' motion for summary judgment as to the appellants' claims of coercion and intentional infliction of emotional distress. However, the court denied appellees' motion for summary judgment as to appellants' claim for civil liability for a criminal act based upon R.C. 2307.60.
 {¶ 9} On March 21, 2003, appellants filed a motion for reconsideration of part of the court's ruling on summary judgment. In their motion, the appellants requested that the court reconsider its decision to dismiss appellants' intentional infliction of emotional distress claims based on the statute of limitations. Later, on March 28, 2003, appellees filed their brief in opposition to the motion for reconsideration, requesting that the court reconsider its decision to deny summary judgment as to appellants' claim for liability under R.C. 2307.60.
 {¶ 10} On July 8, 2003, the trial court granted appellees' motion for reconsideration, thereby dismissing appellants' one remaining claim. Appellants now appeal the trial court's decision to dismiss appellants' claims of intentional infliction of emotional distress. This appeal involves the applicable statute of limitations and Ohio's "Savings Statute."
 II {¶ 11} Because of the substantial interrelation of the two assignments of error, we shall address them together. Appellants' first assignment of error states: "The trial court erred in failing to apply the Savings Statute to plaintiff-appellants' intentional infliction of emotional distress claims against Appellee Bican." Appellants' second assignment of error states: "The trial court erred in applying a two-year statute of limitation to appellants' intentional infliction of emotional distress claims against Appellee Bican."
 {¶ 12} We shall address the two-year statute of limitations issue first. As previously stated, appellants filed their initial complaint on August 15, 2001. Appellants voluntarily dismissed their complaint and then refiled on June 20, 2002. When the appellants refiled, they added a new cause of action, intentional infliction of emotional distress. Prior to refiling their complaint, appellants did not seek to amend their first complaint and add the intentional infliction of emotional distress claim.
 {¶ 13} R.C. 2744.04(A) provides the following:
"Statute of limitations; demand for judgment
 An action against a political subdivision to recover damagesfor injury, death, or loss to person or property allegedly causedby any act or omission in connection with a governmental orproprietary function, whether brought as an original action,cross-claim, counterclaim, third-party claim, or claim forsubrogation, shall be brought within two years after the causeof action accrues, or within any applicable shorter period oftime for bringing the action provided by the Revised Code. The period of limitation contained in this division shall be tolled pursuant to section 2305.16 of the Revised Code. This division applies to actions brought against political subdivisions by all persons, governmental entities, and the state."
 {¶ 14} (Emphasis added.)
 {¶ 15} Appellants argue that the four-year statute of limitations applies; we disagree. The statute of limitations for suing a political subdivision is two years under R.C. 2744.04(A).Koncsol v. Niles (1995), 105 Ohio App.3d 535, 538; Read v.Fairview Park (2001), 146 Ohio App.3d 15, 19; Bojac Corp. v.Kutevac (1990), 64 Ohio App.3d 368, 371. The two-year statute of limitations under R.C. 2744.04(A) applies to both political subdivisions and their employees. Read, supra; Bojac, supra. R.C. 2744.04(A) is a special provision governing the statute of limitations in tort cases against political subdivisions and it prevails over the general statutes of limitations contained in R.C. Chapter 2305. See Koncsol v. Niles (1995),105 Ohio App.3d 535.
 {¶ 16} In the case at bar, the trial court properly applied the correct two-year statute of limitations. The lower court cited the appropriate case law in its July 8, 2003 journal entry, "* * * The two-year statute of limitations is correct. SeeBojac Corp. v. Kutevac, (Oct. 1990), Eleventh District,64 Ohio App.3d 368."[14] As previously stated, appellants had two years, in this case, until March 1, 2002, to bring their intentional infliction of emotional distress claims against appellees. Appellants did not amend their previous complaintprior to dismissing it and did not file their second claim untilJune 20, 2002. Therefore, barring any exceptions, appellants' intentional infliction of emotional distress claims are excluded by the applicable two-year statute of limitations.
 {¶ 17} Appellants' second assignment of error is overruled.
 {¶ 18} Appellants argue in their first assignment of error that the Savings Statute applies. However, before addressing the Savings Statute, this court will first address the value of appellants' intentional infliction of emotional distress claims. To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show the following: (1) that the defendant intended to cause the plaintiff serious emotional distress; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. Phungv. Waste Mgt., Inc. (1991), 71 Ohio St.3d 408, 410. Extreme and outrageous conduct is conduct that goes beyond all possible bounds of decency and is so atrocious that it is "utterly intolerable in a civilized society." Yeager v. Local Union 20
(1983), 6 Ohio St.3d 369, 375. "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to sustain a claim for relief. Id.
 {¶ 19} "* * * The requirement of `extreme and outrageous' conduct necessary to the tort of intentional infliction of emotional distress (sic) is not established simply by ordinary tortious or even criminal activity. If that were the case, untimely claimants for any sort of intentionally tortious actions could easily subvert an applicable statute of limitations simply by entitling their action as one for intentional infliction of emotional distress. This would clearly contravene the legislative authority which has limited certain actions to be brought within specified times. Thus, if the set of facts complained of gives rise to a conventional tort action for which the legislature has clearly delineated a statute of limitations, the claim should usually be governed by that statute." See Presti v. Ahrens
(Nov. 17, 1988), Cuyahoga App. No. 54620, quoting Pournaras v.Pournaras (Dec. 12, 1985), Cuyahoga App. Nos. 49936 and 49937.
 {¶ 20} In the case sub judice, Bican threatened to press criminal charges against Gnezda and Cepik if they did not resign. Given the fact that the findings of two separate third-party arbitrators resulted in disciplinary action and the fact that the officers did engage in inappropriate conduct, we fail to see extreme and outrageous conduct on the part of appellees. Mere threats are not enough to constitute extreme and outrageous conduct. Finding no merit to appellants' claim, it is unnecessary to address appellants' Savings Statute claim. We find no merit to the sole remaining claim, intentional infliction of emotional distress. Accordingly, appellants' first and second assignments of error are overruled.
 {¶ 21} The judgment is affirmed.
Judgment affirmed.
 Kilbane, P.J., concurs.
 Cooney, J., concurs in judgment only.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] See affidavit of Police Chief Bican, authenticating Arbitrator Jonathan Klein's opinion and award at 3.
[2] See Arbitrator Klein's opinion at 13.
[3] Arb. Klein's op. at 14.
[4] Arb. Klein's op. at 28.
[5] Arb. Klein's op. at 28.
[6] Arb. Klein's op. at 29.
[7] Arb. Klein's op. at 30.
[8] Arb. Klein's op. at 34.
[9] Arb. Nelson's op. at 17.
[10] Arb. Nelson's op. at 17.
[11] Arb. Nelson's op. at 16.
[12] See complaint filed in first case, Case No. CV-446407. Also, see, R.C. 2307.60; civil recovery for criminal act; record of conviction as evidence. "(A) Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code. * * *"
[13] See complaint filed in second case, Case No. CV-473572.
[14] See trial court's July 8, 2003 journal entry stating the following: "Plaintiff's P1 Lou Gnezda motion for reconsideration of part of the courts ruling on defts motion for summary judgment. Caryn M. Groedel 0060131, filed 3/21/2003, is denied. After review of plaintiff's motion and defendant's opposition the court affirms the ruling on the summary judgment as to Count III. The two year statute of limitations is correct. See Bojac Corporation v. Kutevac, (Oct. 1990) Eleventh District,64 Ohio App.3d 368."