[Cite as *Montgomery v. The Ohio State Univ.*, 2011-Ohio-6857.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MONTGOMERY,

       Plaintiff,                          Case No. 2010-01174

       v.                                Judge Joseph T. Clark

THE OHIO STATE UNIVERSITY,

       Defendant.                        <u>DECISION</u>

{¶1} On August 29, 2011, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On September 19, 2011, plaintiff filed a response. The motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶2} Civ.R. 56(C) states, in part, as follows:

{¶3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." See also *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317.

{¶4} Plaintiff, a former football player at defendant, The Ohio State University (OSU), brought this action alleging negligent misrepresentation, medical malpractice,

and defamation. According to the amended complaint, during plaintiff's senior year at OSU he was under consideration for employment with the National Football League (NFL). As part of the process, the NFL, through its Professional Football Athletic Trainers Society, sent OSU a "Medical and Injury History Questionnaire" (questionnaire) regarding plaintiff. On or about October 19, 1998, Douglas C. Calland, an OSU athletic trainer checked the boxes under the section captioned "Disease or Illness" affirming that plaintiff had "high blood pressure" and "hay fever." Calland then returned the form. As of that date, plaintiff had not been diagnosed with either high blood pressure or hay fever. Plaintiff was unaware of the contents of the form.

{¶5} Plaintiff subsequently obtained employment with an NFL team in 1999. On or about July 29, 2009, Dr. Mark Hyman issued an "Agreed Medical Evaluation" for use in assessing plaintiff's medical condition in connection with plaintiff's application for benefits under the guidelines established by the State of California Division of Workers' Compensation. Dr. Hyman assessed plaintiff as suffering from hypertensive heart disease with left ventricular hypertrophy. Relying on the form completed by Calland, Dr. Hyman apportioned 50 percent of the responsibility for the condition to pre-NFL high blood pressure. As a result of the apportionment, plaintiff's benefit would likely be reduced. Plaintiff contacted OSU seeking correction of the information contained in the NFL questionnaire. Dr. Christopher Kaeding, head team physician at OSU, responded in a letter by stating that OSU does not believe the questionnaire completed by Calland is inaccurate.

{¶6} Plaintiff brought this action against OSU seeking to recover damages including lost wages, diminished fringe benefits, and diminished insurance proceeds that he allegedly incurred as a result of false and misleading information provided to the NFL.

{¶7} In ruling on defendant's motion to dismiss, this court stated that "the amended complaint conclusively establishes that plaintiff's claim for relief sounds in defamation and, to the extent that such claim is based upon the statement published in 1998, it is barred by the statute of limitations." This court went on to conclude that plaintiff's only surviving claim for relief was his claim for defamation arising out of the alleged 2009 publication of a letter authored by defendant's employee and team

physician, Dr. Christopher Kaeding. With respect to that claim, the court stated, "[a]lthough the complaint alleges that the letter was sent to plaintiff in 2009, the complaint does not identify any third-party to whom the letter was published. There is also no copy of the letter provided with plaintiff's amended complaint."

{¶8} Defamation consists of "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement of the Law 2d, Torts (1977) 155, Section 558.

{¶9} In defendant's motion for summary judgment, defendant argues that Dr. Kaeding's letter contains no false and defamatory statements of fact. The letter provides in relevant part:

{¶10} "As you know, you have contacted The Ohio State University and explained that you are contesting Dr. Hyman's conclusion regarding your impairment rating for worker's compensation/disability purposes. You have further explained your belief that the National Football League's Medical and Injury History Update form (the "NFL Form") (completed at your request by Ohio State on October 19, 1998) is inaccurate. While the University does not believe that it is inaccurate, we are happy to clarify the basis upon which we completed the form.

{¶11} "* * *

{¶12} "The Ohio State University never gave you a formal 'diagnosis of hypertension,' as Dr. Hyman represents in his medical evaluation report of July 29, 2009. Rather, the records you have sent us show a number of episodes of elevated and/or high blood pressure (highlighted in the following list of all blood pressure readings):

| {¶13} Blood Pressure | Date | Notes |
|---|---|---|
| {¶14} 120/70 | 8/14/1998 | physical exam |
| {¶15} 130/100 | 8/7/1997 | physical exam |
| {¶16} 138/78 | 8/16/1996 | physical exam |
| {¶17} 126/84 | 8/2/1995 | physical exam |
| {¶18} 120/90 | 8/3/1994 | physical exam |

| {¶19} 148/110 | 11/11/1997 | clinical notes |
| {¶20} 120/84 | 11/25/1994 | progress notes |
| {¶21} 138/100 | 12/13/1994 | progress notes |
| {¶22} 139/96 | 12/15/1994 | pre stress test baseline |
| {¶23} 144/100 | 3/20/1995 | |
| {¶24} 125/80 | 3/20/1995 | |

{¶25} The records are confirmed by the personal recollections of involved University staff who remember that you had sporadic occurrences of elevated/high blood pressure. There were several readings that were in the normal range (normal blood pressure is 120/80.) The records show that you were never on medication for high blood pressure and that we never referred you to see a specialist for hypertension.

{¶26} "It was based upon this history of episodes of elevated and/or high blood pressure that the University checked the box on the NFL Form that related to high blood pressure.

{¶27} "I trust that this clarifies the basis upon which the University completed the NFL Form."

{¶28} Defendant first contends that Dr. Kaeding's letter was never published to a third party. In support of this contention, defendant submitted the affidavit of Julie D. Vannatta, defendant's Senior Assistant General Counsel-Athletics and Senior Associate Athletics Director-Legal. Therein, Vannatta avers that she forwarded Dr. Kaeding's letter to plaintiff; that one copy was retained by her; that another copy was provided to defendant's Head Athletic Trainer, Douglas Calland; that a third and final copy was provided to defendant's Assistant Athletic Director for Sports Performance, Janine Orman; and that the letter was electronically distributed to Melissa Woo of the law firm of Namanny, Byrne & Owens of Laguna Hills, California. According to the affidavit, Calland was directly involved in the preparation of the 1998 NFL questionnaire that gave rise to this action, and Orman was Dr. Kaeding's supervisor.

{¶29} Plaintiff argues that a publication occurred when Vannatta sent copies of Dr. Kaeding's letter to Calland and Orman, even though both individuals are employees of defendant, and that an actionable publication also occurred when Dr. Kaeding's letter was forwarded by defendant to his workers' compensation lawyers in California without

plaintiff's express permission and with knowledge that such letter would be published to third parties in connection with plaintiff's workers' compensation claim. The relevant portions of plaintiff's affidavit are as follows:

{¶30} "11. At no time during any of my communications with Ohio State University employees requesting correction of the misdiagnosis in the NFL Questionnaire did I authorize any employee of Ohio State University to communicate directly with my worker's compensation attorneys.

{¶31} "12. I did not sign an authorization for release of the 2009 Medical Report signed by Dr. Kaeding to [m]y worker's compensation attorneys.

{¶32} "13. I did not ask anyone at The Ohio State University to send the 2009 Medical Report to my worker's compensation attorneys, nor did my worker's compensation attorneys request a copy of the report.

{¶33} "14. Prior to Ms. Vannatta sending the 2009 medical report signed by Dr. Kaeding to my worker's compensation attorneys, no one asked me for permission for Ohio State University to forward the 2009 medical report to my worker's compensation attorneys, nor was I informed by anyone that Ms. Vannatta or anyone on behalf of Ohio State University intended to send the 2009 medical report to my worker's compensation attorneys.

{¶34} "15. The Ohio State University did not have authorization from me to release any of my medical records to Mr. Namanny or his office in 2009."

{¶35} Plaintiff acknowledges that the law firm of Namanny, Byrne & Owens is his legal representative in the California proceedings and that he asked his lawyers to forward his medical records to defendant. Plaintiff denies, however, that he authorized OSU to send a reply to his law firm.

{¶36} A communication to a servant or agent of the one defamed is a publication for purposes of a claim for defamation unless it is in answer to a request from the agent. See Restatement of the Law 2d, Torts (1977) 203, Section 577, Comment *e.* Here, the email correspondence attached as an exhibit to Vannatta's affidavit permits an inference that plaintiff's counsel requested a copy of the Kaeding letter. Plaintiff's affidavit, however, contains plaintiff's denial that such authority was given. Thus, an issue of fact exists with regard to publication.

{¶37} Defendant next argues that the 2009 letter does not contain any false and defamatory statements. The court agrees.

{¶38} In a defamation action, the trial court is to determine as a matter of law whether the words used are "actionable or not." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372; *Early v. The Toledo Blade* (1998), 130 Ohio App.3d 302, 320. Thus, whether a particular statement is capable of bearing a particular meaning and whether that meaning is defamatory are questions of law for the court. See *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 590; Restatement of the Law 2d, Torts (1977) 311, Section 614(1).

{¶39} Plaintiff contends that the statement by Dr. Kaeding that "the University does not believe that [1998 questionnaire] is inaccurate" is itself false and defamatory in that Dr. Kaeding is confirming a false diagnosis of hypertension that was allegedly made in 1998. However, even if the court were to conclude that the 1998 questionnaire contained a false "diagnosis" of high blood pressure, the subsequent portions of Dr. Kaeding's letter clearly dispel the notion that any such diagnosis was intended. The letter goes on to state that "[t]he records show that you were never on medication for high blood pressure and that we never referred you to see a specialist for hypertension."

{¶40} Plaintiff does not now contend that the blood pressure readings contained in the letter are inaccurate, nor does he suggest that any normal readings were omitted from the list contained in the letter. Thus, with respect to the statement regarding the accuracy of the 1998 questionnaire, the court finds that such statement(s) are not defamatory, as a matter of law.

{¶41} Plaintiff next contends that the recital of plaintiff's blood pressure readings as recorded by defendant's medical and training staff, without noting whether plaintiff was under stress at the time the reading was taken, induces the reader to conclude falsely that plaintiff suffered from hypertension in 1998. In his affidavit, plaintiff acknowledges that his medical records "do show episodes of elevated blood pressure" but he explains that "the medical records also show that those episodes were always accompanied by significant stress or trauma."

{¶42} Although the court finds that it is possible for an educated reader to infer from the factual information contained in the letter that plaintiff may suffer from high

blood pressure, it is also clear from the context of the letter that neither Dr. Kaeding nor OSU have taken any position whether plaintiff is hypertensive. In short, the court finds that, as a matter of law, the letter is not capable of bearing the defamatory meaning attributed to it by plaintiff.

{¶43} For the foregoing reasons, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law as to plaintiff's claim for defamation. Accordingly, defendant's motion for summary judgment shall be granted and judgment shall be entered for defendant.



Court of Claims of Ohio

**MONTGOMERY,**

      **Plaintiff,**                    **Case No. 2010-01174**

      **v.**                         **Judge Joseph T. Clark**

**THE OHIO STATE UNIVERSITY,**

      **Defendant.**                  **<u>JUDGMENT ENTRY</u>**

{¶44} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

_____
JOSEPH T. CLARK
Judge

cc:

Daniel R. Forsythe                Norman A. Abood
Karl W. Schedler                 203 Fort Industry Square
Assistant Attorneys General      152 North Summit Street
150 East Gay Street, 18th Floor   Toledo, Ohio 43604
Columbus, Ohio 43215-3130

Filed November 8, 2011
To S.C. reporter December 30, 2011