O P I N I O N
Plaintiff-appellant Matthew Wenzel appeals from a summary judgment rendered against him and in favor of defendants-appellees Al Castrucci, Inc. II, dba Al Castrucci Auto Mall, and Mays Shedd Sales Co., dba Mays Shedd Sales Service, with respect to his intentional infliction of emotional distress claim. Wenzel also appeals from the trial court's dismissal of his intentional tort claim against Al Castrucci, and his "recklessness" claim against Mays Shedd. Wenzel argues that the trial court erred by granting summary judgment to Al Castrucci and Mays Shedd on his intentional infliction of emotional distress claim because genuine issues of material fact remain to be litigated with respect to each material element of that claim. Wenzel also argues that the trial court erred by applying the two-year statute of limitations period contained in R.C. 2305.10 to his intentional tort and recklessness claims, and by determining that he could not avail himself of the protections of the savings statute contained in R.C. 2305.19. Wenzel asserts that the trial court should have applied the one-year statute of limitations periods contained in R.C. 2305.111
and 2305.112 to his claims for recklessness and intentional tort, respectively. Had it done so, Wenzel asserts, the protections of the savings statute in R.C. 2305.19 would have been available to him.
We conclude that the trial court properly granted summary judgment to Al Castrucci and Mays Shedd on Wenzel's intentional infliction of emotional distress claim because their alleged conduct was insufficient as a matter of law to meet the "extreme and outrageous" element of that claim. We further conclude that the trial court did not err by applying the two-year statute of limitations period contained in R.C. 2305.10 to his claims for intentional tort and recklessness, nor by concluding that Wenzel could not avail himself of the protections of the savings statute. Accordingly, the judgment of the trial court is Affirmed.
 I
Wenzel was an oil and lubrication technician at Al Castrucci Auto Mall. As part of his duties there, Wenzel was occasionally required to cut the tops off empty, 55- gallon drums, using an acetylene torch, in order to convert the drums into trash cans. The empty drums had contained windshield washer solvent concentrate, which Al Castrucci had purchased from Mays Shedd.
On October 11, 1994, Wenzel was in his service bay, using an acetylene torch to cut the top off one empty drum that was sitting approximately three feet away from a half-empty drum of windshield washer solvent concentrate. Suddenly, the half-empty drum of windshield washer solvent concentrate exploded. Wenzel was seriously injured as a result. The explosion was caused by sparks from the acetylene torch igniting either fumes or solvent leaking from a hand pump that was on top of the half- empty drum.
On October 11, 1995, Wenzel filed a complaint, raising a claim for intentional tort against Al Castrucci, claims for negligence, recklessness, and negligent infliction of emotional distress against Mays Shedd, and claims for intentional infliction of emotional distress, and violations of OSHA regulations, against both Al Castrucci and Mays Shedd. Wenzel voluntarily dismissed this complaint on September 9, 1996.
Wenzel refiled his complaint one year later. Al Castrucci moved to dismiss all of the causes of action filed against it on the grounds that Wenzel was barred from raising them by the applicable statute of limitations, and that Wenzel could not avail himself of the protections of the savings statute, R.C. 2305.19. Mays Shedd moved to dismiss all of the causes of action filed against it (except for the intentional infliction of emotional distress claim) on similar grounds.
The trial court dismissed all of Wenzel's causes of action, except for his intentional infliction of emotional distress claim, pursuant to Civ.R. 12(B)(6).
Al Castrucci and Mays Shedd subsequently moved for summary judgment with respect to Wenzel's remaining claim for intentional infliction of emotional distress. After Wenzel responded, the trial court granted Al Castrucci's and Mays Shedd's summary judgment motions on Wenzel's intentional infliction of emotional distress claim.
Wenzel appealed from the portion of the trial court's judgment dismissing his intentional tort claim against Al Castrucci, and his recklessness claim against Mays Shedd. Wenzel also appealed from the summary judgment rendered against him and in favor of Al Castrucci and Mays Shedd, on his intentional infliction of emotional distress claim.
While reviewing Wenzel's assignments of error, this court noticed that the depositions of three critical witnesses, Matthew Wenzel, William Betzler, and Larry Dehus, were missing from the record on appeal. Therefore, on April 13, 1999, this court remanded this matter to the trial court pursuant to App.R. 9(E) for the limited purpose of having the trial court state whether the depositions of Wenzel, Betzler, and Dehus were considered by the trial court in rendering summary judgment in this matter. On June 1, 1999, the trial court issued an Entry stating that it had considered the depositions of Wenzel, Betzler, and Dehus in rendering summary judgment in the case. The trial court ordered that the depositions "be filed in the proceedings forthwith and included as part of the record on appeal."
Pursuant to the trial court's June 1, 1999 Entry, this court finds that the depositions of Wenzel, Betzler, and Dehus are part of the record on appeal. Accordingly, this matter is ready for decision.
 II
Wenzel's First Assignment of Error states:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF WENZEL BY GRANTING APPELLEES' MOTIONS FOR SUMMARY JUDGMENT.
A trial court may grant a motion for summary judgment only where there is no genuine issue of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66.
In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the defendant intended to cause him serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. Phung v. Waste Mgt., Inc. (1994), 71 Ohio St.3d 408,410. "Extreme and outrageous" conduct has been described as follows:
 " * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' "
Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-375, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46(1), comment d.
Wenzel asserts that there are genuine issues of material fact with respect to each element of his intentional infliction of emotional distress claim against Al Castrucci and Mays Shedd, and, therefore, the trial court erred by rendering summary judgment against him. We disagree. Even when the evidence in the record is construed in a light most favorable to Wenzel, the actions of Al Castucci and Mays Shedd do not, as a matter of law, constitute extreme and outrageous conduct; therefore, Wenzel cannot prevail on his intentional infliction of emotional distress claim against either Al Castrucci or Mays Shedd.
 A
In support of his argument that Al Castrucci's conduct was extreme and outrageous, Wenzel asserts that his supervisor, William Betzler, directed him to use an acetylene torch to cut the top off an empty drum of windshield washer concentrate, with a half-empty drum of the substance standing in close vicinity, despite the fact that Betzler knew of the volatile and explosive nature of the windshield washer solvent concentrate; knew there were warning labels on the drums advising persons not to use a "welding or cutting torch on the drum even when empty"; knew that a defective hand pump was being used on the drums of windshield washer solvent concentrate, from which solvent and vapors were leaking; and knew there were multiple, potential ignition sources in the area where the windshield washer solvent concentrate was stored. Wenzel insists that a recitation of these facts would cause an average member of the community to shout "Outrageous!" We disagree.
Initially, Betzler has denied that he ordered Wenzel to cut the top off the empty drums in the service bay area, as Wenzel claims; Betzler asserts that he told Wenzel to cut the tops off the drums outside, behind the service shop. However, in light of our duty to look at the evidence in a light most favorable to the nonmoving party, Wenzel, we must assume that Wenzel's version of events is accurate.
Nevertheless, it is undisputed that Betzler instructed Wenzel to fill the empty drums with water before cutting them with the torch in order to dilute any windshield washer solvent concentrate remaining in the drum, and to rid the drums of any vapors from the substance. Betzler testified in his deposition that he believed that by taking this precaution, it was safe to cut the drums with an acetylene torch.
Wenzel's expert witness, Larry Dehus, agreed with Betzler that cutting the top off the drums after they had been filled with water to evacuate all of the vapor and solvent did not present a hazard, per se. Dehus's complaint was that Al Castrucci allowed Wenzel to cut the tops off the drums in the service bay area, where other flammable liquids were stored, including the half-empty drum of windshield washer solvent, and where potential ignition sources existed. However, other employees at Al Castrucci had performed the same procedure without an accident occurring, and Wenzel, himself, had cut the top off empty drums of windshield washer solvent concentrate on two previous occasions, with a half-empty drum standing nearby, without incident.
As the trial court concluded, while the act of ordering Wenzel to cut the top off the drums with an acetylene torch, in spite of the warnings not to do so, may well have been irresponsible and reckless in hindsight, it does not rise to the level of extreme and outrageous conduct required to maintain a cause of action for intentional infliction of emotional distress, at least where Betzler believed, with some basis for his belief, that his directive to fill the empty drum with water would remove the risk of an explosion. More specifically, it does not constitute conduct "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."Yeager, supra, quoting Restatement of the Law 2d, Torts (1965) 71 Section 46(1), comment d. It may well have been negligent of Betzler not to have directed Wenzel's attention to the hazard posed by the other, nearby drums of solvent, and it may even have been reckless conduct, but, in our view, this conduct does not, as a matter of law, satisfy the Yeager test for outrageousness.
 B
In support of his argument that Mays Shedd's conduct was extreme and outrageous, Wenzel points out that May Shedd knew, or should have known, through its sales and delivery personnel, that employees at Al Castrucci, like himself, were cutting off the tops of empty drums of windshield washer solvent concentrate; that the solvent was highly flammable and could cause an explosion; that the hand pump Al Castrucci was using on the drums was subject to leaking; and that multiple ignition sources existed in the service bay where Mays Shedd would deliver the drums. Wenzel faults Mays Shedd for not instructing someone at Al Castrucci on the proper handling and storage of the solvent, and insists that a triable issue of fact exists regarding whether Mays Shedd's failure to do so constitutes an intentional infliction of emotional distress. Wenzel also argues that a genuine issue of material fact exists regarding whether the drums contained labels warning of the drum's hazards. Again, we disagree.
Initially, Mays Shedd presented evidence showing that it placed warning labels on all the drums of windshield washer solvent concentrate sent to Al Castrucci. The labels warned of the flammable nature of the product, and included an instruction not to use a cutting or welding torch on the drum, even when empty. Wenzel has taken an inconsistent stance on the factual question of whether warning labels were placed on the drums. For example, in order to hold Al Castrucci liable, Wenzel points to Betzler's testimony indicating that he knew of the aforementioned warning labels on the drums before the accident occurred, thereby showing that the drums did have warning labels on them. Then, in order to hold Mays Shedd liable, Wenzel points to his own testimony, as well as that of Mays Shedd's sales and delivery personel, wherein all three stated that they did not remember if there were warning labels on the drums, in order to prove that an issue of fact remains as to whether the drums contained warning labels.
Contrary to what Wenzel asserts, the fact that Wenzel and Mays Shedd's sales and delivery personnel could not remember whether the drums contained warning labels does not provide any proof that drums did not contain warning labels; in fact, Wenzel acknowledged in his deposition that he was not denying that the drums contained warning labels, but instead was simply saying he could not remember if they did or not. Nevertheless when he was shown a copy of the label contained on the drum, Wenzel replied, that he "would have noticed something that big." Furthermore, Wenzel's expert, Dehus, testified that he was shown a photograph of the drum that Wenzel was cutting at the time of the accident, and that it did not appear to him from the photograph that the drum had been properly labeled. Thus, an issue of fact arguably exists concerning whether the two drums in the service bay at the time of the accident, did, in fact, contain warnings.
However, even when this evidentiary conflict is resolved in Wenzel's favor as it must be for summary judgment purposes, the evidence still does not create a triable issue of fact on the element of extreme and outrageous conduct. For instance, it is undisputed that Mays Shedd provided Al Castrucci with a Material Safety Data Sheet (MSDS) warning of the dangers of the windshield washer solvent concentrate, including its potentially explosive qualities. It is also undisputed that Wenzel's supervisor, Betzler, knew of the warning labels on the drums. While it may have been negligent or even reckless not to have (1) ensured that Al Castrucci posted the MSDS in the service bay area, (2) placed warning labels on each of the drums of windshield washer solvent concentrate delivered to Al Castrucci, or (3) instructed someone at Al Castrucci on the proper handling and storage of the product, Mays Shedd's alleged failure to do so does not rise to the level of extreme and outrageous conduct, as defined in Yeager, supra;
thus, Wenzel cannot prevail on his intentional infliction of emotional distress claim against Mays Shedd.
In light of the foregoing, Wenzel's First Assignment of Error is overruled.
 III
Wenzel's Second Assignment of Error states:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN GRANTING APPELLEES' MOTIONS TO DISMISS.
Wenzel contends that the trial court erred in dismissing his intentional tort claim against Al Castrucci, and his recklessness claim against Mays Shedd on the grounds that the claims were barred by the applicable statute of limitations, and the savings statute contained in R.C. 2305.19 could not be applied to salvage the claims under the facts of this case.
 A
The trial court determined that Wenzel's intentional tort claim against Al Castrucci was governed by the two-year statute of limitations period for personal injury actions, contained in R.C.2305.10. The trial court also determined that Wenzel could not avail himself of the protections of the savings statute because his September 9, 1996 voluntary dismissal of his claims, which constituted a "failure otherwise upon the merits" for purposes of the savings statute, had occurred prior to the expiration of the two-year limitations period on October 11, 1996.
Wenzel argues that the trial court should have applied the one-year statute of limitations governing employer intentional torts contained in R.C. 2305.112 to his intentional tort claim against Al Castrucci. Had it done so, Wenzel argues, the savings statute would have been available to him, since, in that case, the September 9, 1996 voluntary dismissal of his claims would have taken place after the expiration of the one-year statute of limitations period on October 11, 1995. We disagree.
R.C. 2305.19, the savings statute, states in pertinent part:
 In an action commenced, or attempted to be commenced, * * * if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff * * * may commence a new action within one year after such date.
The savings statute applies where: (1) the plaintiff "fails otherwise than upon the merits," and (2) the time limit for bringing the action has expired by the date he does so. A voluntary dismissal pursuant to Civ.R. 41(A)(1) constitutes a "failure otherwise than upon the merits," for purposes of the savings statute. Frysinger v. Leech (1987), 32 Ohio St.3d 38, paragraph two of the syllabus.
R.C. 2305.112(A) provides:
 An action for an employment intentional tort under section 2745.01 of the Revised Code shall be brought within one year of the employee's death or the date on which the employee knew or through the exercise of reasonable diligence should have known of the injury, condition, or disease. (Emphasis added.)
R.C. 2305.112(A) expressly provides a one-year statute of limitations for employment intentional tort actions brought underR.C. 2745.01. However, the current version of R.C. 2745.01, and the current version of its related statute of limitations provision in R.C. 2305.112(A) did not become effective until November 1, 1995. The predecessor versions of these statutes became effective October 20, 1993, but on April 8, 1994, the Ohio Supreme Court ruled that former R.C. 2745.01 was unconstitutional in State ex rel. Ohio AFL-CIO v. Voinovich (1994), 69 Ohio St.3d 225,230, thereby rendering former R.C. 2305.112(A) a nullity. See Wilson v. Lincoln Elec. Co. (Sept. 19, 1997), Lawrence App. No. 97CA5, unreported. Thus between April 8, 1994, and November 1, 1995, there was no statutory cause of action in this state for employer intentional tort, only a common law action for intentional tort. The appropriate statute of limitations for a common law action for intentional tort is the two- year limitations period contained in R.C. 2305.10. See Anderson v.Brush-Wellman, Inc. (1991), 77 Ohio App.3d 657, and Malatesta v.Sharon Twp. Trustees (1993), 87 Ohio App.3d 719.
Here, Wenzel's injury occurred on October 11, 1994, during the period when there was no statutory cause of action for employer intentional tort. Because Wenzel could not have brought an action pursuant to R.C. 2745.01, the one-year limitations period in R.C. 2305.112(A) cannot govern his intentional tort claim. Accordingly, the trial court did not err in applying the two-year limitations period contained in R.C. 2305.10 to Wenzel's intentional tort claim against Al Castrucci.[1]
 B
The trial court determined that Wenzel's recklessness claim against Mays Shedd was also governed by the two-year statute of limitations contained in R.C. 2305.10, and that Wenzel could not avail himself of the protections of the savings statute to salvage this claim either, since, once again, the voluntary dismissal of his claim occurred prior to the expiration of the two-year limitations period.
Wenzel argues that when the allegations in his recklessness claim are construed in a light most favorable to him, they "indicate that Mays Shedd intended to place [him] in apprehension of a harmful or offensive bodily contact which, in fact, resulted." Thus, Wenzel asserts, the trial court should have construed his recklessness claim as an assault and battery claim governed by the one-year statute of limitations period in R.C.2305.111, thereby allowing him to salvage at least one of his claims against Mays Shedd under the savings statute. We disagree.
Wenzel's recklessness claim states in pertinent part:
THIRD CLAIM FOR RELIEF
 RECKLESSNESS
* * *
 18. Defendant Mays-Shedd perversely disregarded the accepted standard of care and safety procedures of professionals involved in the delivery, placement and unloading of flammable concentrates under the same or similar circumstances.
 19. Defendant acted recklessly when, with heedless indifference to the consequences, they perversely disregarded the risk of exposing Plaintiff to this flammable substance and its known potential for explosion and injury.
Initially, this court is unaware of any cause of action in this state for "recklessness," per se. Cf. Rose v. Haubner (June 5, 1997), Franklin App. No. 96APE11-1488, unreported. Nevertheless, Wenzel's Third Claim for Relief states a cause of action for recklessness, not assault and battery. See R.C.2901.22 and 3737.88(A)(3) ("[a] person acts `recklessly' when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature"). The Third Claim for Relief contains neither the elements of a battery (harmful or offensive physical contact), nor an assault (willful threat, or attempted battery by one who has apparent, present ability to do so). Smith v. John Deere Co. (1993), 83 Ohio App.3d 398,406. In fact, Wenzel's recklessness claim was wedged in between his negligence and strict liability claims (Second and Fourth Claims for Relief, respectively) against Mays Shedd. Wenzel's Third Claim for Relief, even when given a liberal construction, cannot be construed as an assault and battery claim.
Furthermore, Wenzel's reliance upon Love v. Port Clinton
(1988), 37 Ohio St.3d 98, is misplaced. That case held:
 Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence. Id. at syllabus.
In Love v. Port Clinton, the plaintiff brought an action for personal injuries against a police officer who had handcuffed him. Because the one-year statute of limitations for battery contained in R.C. 2305.111 had expired, the plaintiff styled his claim against the police officer as one for negligence or recklessness in order to avail himself of the two-year statute of limitations period for personal injuries contained in R.C. 2305.10. The Ohio Supreme Court disallowed the plaintiff's claim, determining that the contact involved was intentional because "one cannot accidentally handcuff or subdue another." Id. at 99. Thus, the court held, the statute of limitations for assault and battery governed the action, even though it had been pled as one sounding in negligence. The court explained that:
 [t]o hold otherwise would defeat the assault and battery statute of limitations. Nearly any assault and battery can be pled as a claim in negligence. We agree with the court in Grimm v. White (1980), 70 Ohio App.2d 201, 203, * * * which recognized that: " * * * [T]hrough clever pleading or by utilizing another theory of law, the assault and battery cannot be [transformed] into another type of action subject to a longer statute of limitations as it would circumvent the statute of limitations for assault and battery to allow that to be done." Love v. Port Clinton, supra, at 99-100.
As can be seen, Love v. Port Clinton sought to prevent litigants from circumventing a statute of limitations period through the use of "clever pleading." Here, Wenzel is attempting to circumvent the limitations of the savings statute, by styling his recklessness claim as being one for assault and battery. However, Wenzel did not bring an assault and battery claim; in fact, he never even mentioned assault and battery until Mays Shedd filed its Motion to Dismiss, making it clear to him that there was a very real possibility that he was not going to be able to use the savings statute to preserve most of his causes of action.
Assuming arguendo that a cause of action for recklessness does exist in this state, it would fall under the general, two-year statute of limitations period governing personal injuries contained in R.C. 2305.10. Because Wenzel's Third Claim for Relief was a cause of action for recklessness, not for assault and battery, the trial court correctly determined that it was governed by the limitations period contained in R.C. 2305.10.
Wenzel's Second Assignment of Error is overruled.
 IV
Both of Wenzel's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Christopher J. Cornyn
Timothy C. Sullivan
Stephen C. Findley
Hon. James Gilvary
C/O Hon. Barbara P. Gorman
[1] During the pendency of this appeal, the Ohio Supreme Court declared the current version of R.C. 2745.01
"unconstitutional in its entirety." Johnson v. BP Chemicals, Inc.
(1999), 85 Ohio St.3d 298, syllabus. That ruling does not affect our decision in the matter before us, since it removes from contention the shorter statute of limitations provided for in R.C.2745.01, et seq.