NUNC PRO TUNC OPINION
On February 6, 1991, Jill Holzbach was shot to death in the parking lot of the Jackson Township Police Department (hereinafter "JTPD"). No one has ever been arrested for the offense and the investigation is still open. One of the investigating officers is appellee, Jackson Township Police Lieutenant Christopher Rudy. Mrs. Holzbach's husband and daughter are appellants, Jimmy and Jenna Holzbach, respectively. On September 24, 1998, appellants attended a public meeting of the Jackson Township Trustees. In attendance was appellee Rudy. During the meeting, appellant Jimmy Holzbach approached the podium and asked the trustees several questions about the investigation of his wife's murder. In particular, appellant voiced concern over the fact that he was still a "prime suspect." Appellant then asked appellee Rudy "[w]hen do you eliminate a prime suspect?" Appellee Rudy responded "[p]robably when you're arrested." On November 30, 1998, appellants filed a complaint against appellee Rudy and appellee, Jackson Township, alleging wrongful death, negligent investigation, defamation and intentional infliction of emotional distress. On January 19, 1999, appellee Township filed a motion for summary judgment. By judgment entry filed April 1, 1999, the trial court granted said motion, finding the claims against appellee Township were barred by the doctrine of res judicata and the statutory immunity conferred by R.C. Chapter 2744. On October 6, 1999, appellee Rudy filed a motion for summary judgment. By judgment entry filed November 4, 1999, the trial court granted said motion, finding no genuine issues of material fact to exist. Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT PREJUDICIALLY ERRED TO THE DETRIMENT OF APPELLANTS BY GRANTING A MOTION TO DISMISS IN FAVOR OF APPELLEES JACKSON TOWNSHIP AND CITY OF MASSILLON WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED AND WHEN SAID APPELLEES WERE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
 II. THE TRIAL COURT PREJUDICIALLY ERRED TO THE DETRIMENT OF APPELLANTS BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE CHRISTOPHER RUDY WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED AND WHEN CHRISTOPHER RUDY WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
 I
Appellants claim the trial court erred in granting summary judgment to appellee Township. We disagree. Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 448: Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994),68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35. In Count I of their complaint, it appears appellants are alleging wrongful death, negligent investigation and the like regarding the JTPD's handling of Mrs. Holzbach's murder and subsequent investigation. By judgment entry filed April 1, 1999, the trial court found this claim to be barred by the doctrine of res judicata. In Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus, the Supreme Court of Ohio explained res judicata as "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." On February 4, 1993, appellant Jimmy Holzbach filed a complaint (Case No. 1993CV00201) against several parties, one of which was appellee Township, alleging the same claims as in Count I herein. This complaint was subsequently voluntarily dismissed on August 31, 1993. On August 24, 1994, appellant again filed a complaint (Case No. 1994CV1600) against several parties, including appellee Township, alleging the same claims. By judgment entry filed May 8, 1995, the trial court granted summary judgment to appellee Township and entered final judgment in favor of appellee Township. A notice of appeal was filed but was deemed untimely. See, Holzbach v. City of Massillon, et al. (January 22, 1996), Stark App. No. 1995CA00200, unreported. Based upon the foregoing, we agree Count I of appellants' complaint is barred by the doctrine of res judicata. Counts II and III of appellants' complaint allege defamation and intentional infliction of emotional distress pertaining to the exchange between appellant and appellee Rudy at the Jackson Township Trustees meeting. By judgment entry filed April 1, 1999, the trial court found this claim to be barred by the statutory immunity conferred by R.C. Chapter 2744. Under said chapter, political subdivisions are immune from tort liability under most circumstances unless an exception applies. See, R.C. 2744.02(A)(1) and (B). This court has previously reviewed the issue of political subdivision immunity vis ^E vis claims for the intentional torts of intentional infliction of emotional distress and defamation and have found political subdivisions not to be liable for intentional torts. See, Hubbard v. Canton City School Bd. Of Edn., et al. (October 26, 1998), Stark App. No. 1998CA00089, unreported; Copeland v. Reinhard, et al. (May 11, 1998), Stark App. No. 1997CA00281; Shirley v. City of Canton (June 7, 1993), Stark App. No. CA-9144, unreported. See also, Wilson v. Stark County Department of Human Services (1994), 70 Ohio St.3d 450. Based upon the foregoing, we agree Counts II and III of appellants' complaint are barred by the statutory immunity conferred by R.C. Chapter 2744. Upon review, we find the trial court did not err in granting summary judgment to appellee Township. Assignment of Error I is denied.
 II
Appellant claims the trial court erred in granting summary judgment to appellee Rudy. We disagree. Assuming that Count I pertains to appellee Rudy, said claim is barred by the doctrine of res judicata. The claims in Count II and III for defamation and intentional infliction of emotional distress stem from the exchange between appellant and appellee Rudy at the Jackson Township Trustees meeting. At said meeting, appellant approached the podium and asked the trustees several questions about the investigation of his wife's murder. In particular, appellant voiced concern over the fact that he was still a "prime suspect." Appellant then asked appellee Rudy "[w]hen do you eliminate a prime suspect?" Appellee Rudy responded "[p]robably when you're arrested." Appellant argues said response "can only be interpreted as intending ill will, malice, hatred, revenge or reckless disregard of Jimmy Holzbach's rights." Appellant's Brief at 8. In Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 372, the Supreme Court of Ohio explained the "innocent construction rule" as follows: "if allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." In its judgment entry filed November 4, 1999, the trial court adopted this rule and stated "a reasonable person could interpret Defendant's statement as meaning that any suspect in general would be eliminated when arrested." We agree with this analysis. Assuming arguendo that we declined to follow the "innocent construction rule," the claim for defamation still fails. A cause of action for defamation consists of five elements: "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff." Gosden v. Louis (1996), 116 Ohio App.3d 195, 206. Appellant appeared at an open public forum and stated on more than one occasion that he was "the prime suspect" in his wife's murder. June 21, 1999 Holzbach depo. at 34-38. Appellee Rudy did not state at the meeting that appellant was the prime suspect. Appellee Rudy merely responded to a question posed by appellant as to when "a" prime suspect is eliminated. Appellee Rudy responded "[p]robably when you're arrested." Appellant interpreted the "you're" as a personal accusation. Under this interpretation, if in fact appellant is a "prime suspect," then appellee's response was not false. If appellant is not a prime suspect, then appellee Rudy's comment could not have been directed at appellant per se. The only individual that published the fact that appellant was a "prime suspect" was appellant himself. Based upon the foregoing, we find no evidence of defamation. The tort of intentional infliction of emotional distress is defined as `[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' Yeager at 374, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46(1). The conduct complained of must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 375. The "emotional distress alleged must be serious." Id. at 374. "[S]erious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Paugh, vs. Hanks (1983), 6 Ohio St.3d 72,78. As noted by the trial court, the conduct as reflected by the evidence does not, as a matter of law, rise to the level of extreme and outrageous so as to constitute the tort of intentional infliction of emotional distress. Further, there was no evidence of serious emotional distress caused by the conduct. Based upon the foregoing, we find no evidence of intentional infliction of emotional distress. Upon review, we find the trial court did not err in granting summary judgment to appellee Rudy. Assignment of Error II is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 _____________________ Reader, V.J.
By Gwin, P.J. and Edwards, J. concur.