JOURNAL ENTRY AND OPINION
{¶ 1} Appellants, Ronald Heintz and Magdalen Zaricznyj (hereinafter referred to as Heintz or Zaricznyj), appeal from the judgment of the Cuyahoga County Court of Common Pleas, Case No. CR-405843, in which the trial court denied their motion for a judgment notwithstanding the verdict, motion for a directed verdict, and motion for a new trial.
{¶ 2} On April 7, 2000, appellees, Connie and Rossie Hayes [hereinafter referred to as Mrs. Hayes or Mr. Hayes), filed a complaint against Heintz and Zaricznyj alleging a cause of action for ethnic intimidation, negligent infliction of emotional distress, intentional infliction of emotional distress, and interference with quiet enjoyment of the premises. The instant matter stems from several incidents that allegedly occurred while Zaricznyj rented her house on the west side of Cleveland to the Hayeses, an African-American couple. Under the parties' lease agreement, Zaricznyj reserved the right to have access to the basement of the home. During the term of the lease, Zaricznyj and the Hayeses often disagreed concerning the terms of the lease agreement and Zaricznyj's right to access the basement. As a result, Zaricznyj instituted three separate eviction actions against the Hayeses in Cleveland Municipal Court, but failed to evict them during each attempt.
{¶ 3} Claiming continued harassment, the Hayeses filed the instant lawsuit against Zaricznyj and Heintz. The complaint sets forth the following allegations:
 {¶ 4} 9. Between September and November 1998, Defendant Zaricznyj entered the premises two (2) to three (3) times a week for sexual encounters with several different men, without Plaintiff's consent and without notifying Plaintiff.
 {¶ 5} 10. During September 1998, Defendant Zaricznyj began a series of retaliatory actions based, on race, against Plaintiffs.
 {¶ 6} 11. During September 1998, Defendant Zaricznyj told Plaintiff that people in the neighborhood are uncomfortable because of their presence. Defendant also told Plaintiffs that the neighbors are putting their houses up for sale because of you. (Emphasis added.)
 {¶ 7} 12. During October 1998, Defendant Zaricznyj told Plaintiffs that they should move to another property Defendant owned because it was in a black area rather than remaining at the premises, which is in a predominantly white neighborhood. (Emphasis added.)
 {¶ 8} 13. In the evening on or about November 22, 1998, Plaintiff, Connie Hayes was frightened by loud banging on her windows; when Plaintiff looked out the window she recognized Defendant Zaricznyj and an unknown white male.
 {¶ 9} 14. On or about January 9, 1999, at approximately midnight, Defendant and an unknown white male attempted to enter the premises and Plaintiff, Connie Hayes refused to grant them entry and as they turned to leave the male shouted we will fire-bomb the house and that will get the niggers out. (Emphasis added.)
 {¶ 10} 15. On or about February 19, 1999, Plaintiff, Connie Hayes answered her front door and was terrorized to see two (2) men with white hoods on their heads. One of the men shouted, if you're not out of here by Monday, we're going to fire-bomb the house, and burn a cross on the lawn. (Emphasis added.)
 {¶ 11} 16. As the men ran to a car, Plaintiff recognized one (1) of the men as Defendant, Heintz.
{¶ 12} A jury trial commenced on November 24, 2000. At the conclusion of the trial, the jury awarded the following damages for Mrs. Hayes and against Zaricznyj. On the claim of ethnic intimidation, the jury awarded $3,000 in compensatory damages, $7,000 in punitive damages, and attorney's fees; on the claim of negligent infliction of emotional distress, the jury awarded $3,000 in compensatory damages, $7,000 in punitive damages, and attorney's fees; on the claim of intentional infliction of emotional distress, the jury awarded $3,000 in compensatory damages, $7,000 in punitive damages, and attorney's fees; and on the claim of interference with peaceful and quiet enjoyment of the premises, the jury awarded $15,000 in compensatory damages.
{¶ 13} The jury awarded the following for Mr. Hayes and against Zaricznyj. On the claim of ethnic intimidation, the jury awarded $2000 in compensatory damages, $3000 in punitive damages and attorney's fees; on the claim of negligent infliction of emotional distress, the jury awarded $2000 in compensatory damages, $3000 in punitive damages and attorney's fees; on the claim of intentional infliction of emotional distress, the jury awarded $2000 in compensatory damages, $3000 in punitive damages and attorney's fees; and on the claim of peaceful and quiet enjoyment of property, the jury awarded zero dollars.
{¶ 14} The jury awarded the following for Mrs. Hayes and against Heintz. On the claim of ethnic intimidation, the jury awarded $2000 in compensatory damages, $3000 in punitive damages and attorney's fees; on the claim of negligent infliction of emotional distress, the jury awarded $2000 in compensatory damages, $3000 in punitive damages and attorney's fees; on the claim of intentional infliction of emotional distress, the jury awarded $2000 in compensatory damages, $3000 in punitive damages and attorney's fees; and on the claim for peaceful and quiet enjoyment of premises, the jury awarded zero dollars.
{¶ 15} Last, the jury awarded the following for Mr. Hayes and against Heintz. On the claim of ethnic intimidation, zero dollars; on the claim of negligent infliction of emotional distress, the jury awarded $2000 in compensatory damages, $3000 in punitive damages and attorney's fees; and zero dollars on the remaining claims of intentional infliction of emotional distress and quiet enjoyment of premises.
{¶ 16} On December 8, 2000, appellants filed a motion for judgment notwithstanding the verdict and a motion for a new trial. In their motions, the appellants argued that the award of all damages was not supported by sufficient clear and convincing evidence, thus the jury verdict should be overturned. The trial court denied their motions, and their appeal followed.[1]
{¶ 17} "The applicable standard of review for appellate challenges to the overruling of motions for judgment notwithstanding the verdict is identical to that applicable to motions for a directed verdict." Posin v. ABC Motor Court Hotel (1976), 45 Ohio St.2d 271, 344 N.E.2d 334; McKenney v. Hillside Dairy Corp. (1996), 109 Ohio App.3d 164, 176,671 N.E.2d 1291. A motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) tests the legal sufficiency of the evidence. Brooks v. Brost Foundry Co. (May 3, 1991), Cuyahoga App. No. 58065, unreported. "`A review of the trial court's denial of appellant's motion for a directed verdict and motion for judgment notwithstanding the verdict requires a preliminary analysis of the components of the action * * *.' Shore, Shirley Co. v. Kelley (1988), 40 Ohio App.3d 10,13, 531 N.E.2d 333, 337." Star Bank Natl. Assn. v. Cirrocumulus Ltd. Partnership (1997), 121 Ohio App.3d 731, 742-43, 700 N.E.2d 918, citing McKenney v. Hillside Dairy Co. (1996), 109 Ohio App.3d 164,176, 671 N.E.2d 1291 and Pariseau v. Wedge Products, Inc. (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511. Accordingly, the motions test the legal sufficiency of the evidence to go to the jury and therefore present a question of law which we review independently, i.e., de novo, upon appeal. See Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84,90, 509 N.E.2d 399; Eldridge v. Firestone Tire Rubber Co. (1985), 24 Ohio App.3d 94, 493 N.E.2d 293. A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Posin, supra at 275. "Conversely, the motion should be granted where the evidence is legally insufficient to support the verdict." Id.
{¶ 18} In Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169,539 N.E.2d 1114, the court wrote in pertinent part: "The test for granting a directed verdict or judgment n.o.v. is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the non-movant." Id. at 172.
{¶ 19} At trial, the appellees prevailed on four separate causes of action. This court will address the components of each cause of action separately. Shore, Shirley and Co., supra. The statute addressing count one, ethnic intimidation, is a criminal statute found at R.C. 2927.12
which states:
 {¶ 20} (A) No person shall violate section 2903.21
[aggravated menacing], 2903.22 [menacing], 2909.06 [criminal damaging or endangering], or 2909.07 [criminal mischief], or division (A)(3), (4), or (5) of section 2917.21 [telephone harassment] of the Revised Code by reason of the race, color, religion, or national origin of another person or group of persons.
 {¶ 21} (B) Whoever violates this section is guilty of ethnic intimidation. Ethnic intimidation is an offense of the next higher degree than the offense, the commission of which is a necessary element of ethnic intimidation.
{¶ 22} R.C. 2307.70(A) provides:
 {¶ 23} Any person who suffers injury or loss to person or property as a result of an act committed in violation of section 2909.05, 2927.11, or 2927.12 of the Revised Code has a civil action and may recover in that action full damages, including but not limited to, punitive damages and damages for emotional distress, the reasonable costs of maintaining the civil action, and reasonable attorney's fees.
{¶ 24} In giving R.C. 2307.70 its plain and ordinary reading, a person seeking to impose civil liability against another would only be required to prove beyond a preponderance of the evidence that the injury or loss suffered was caused by the actions of another which would be equivalent or tantamount to a violation of one of the criminal statutes listed therein. Proof that the person was found guilty by reason of committing a violation of one of the criminal statutes is not required.
{¶ 25} Here, appellees presented sufficient evidence which would satisfy a preponderance of the evidence standard. The evidence produced at trial alleged that the appellants, on several occasions, harassed and/or menaced the appellees. Further, on separate occasions, the appellees claimed they were threatened with actual and/or perceived physical harm for failing to vacate the premises. The appellees created a question of fact as to whether they believed that they were in personal or physical peril, thus, the appellees provided some evidence of at least one of the underlying offenses necessary to support a claim for ethnic intimidation.
{¶ 26} Even though the appellees presented sufficient evidence on the charge of ethnic intimidation, they must still present sufficient evidence on the elements of emotional distress in order to recover for damages caused by the alleged ethnic intimidation.
{¶ 27} At one time, tort law in Ohio required the existence of physical injury or impact in order for a plaintiff to recover for emotional distress. See Miller v. Baltimore Ohio S.W. R.R. Co. (1908),78 Ohio St. 309, 85 N.E. 499. However, the law then changed to allow recovery for emotional distress that is unaccompanied by a contemporaneous physical injury. See Yeager v. Local Union 20 (1983),6 Ohio St.3d 369, 453 N.E.2d 666; Schultz v. Barberton Glass Co. (1983),4 Ohio St.3d 131, 447 N.E.2d 109; Paugh v. Hanks (1983), 6 Ohio St.3d 72,451 N.E.2d 759. There are two infliction of emotional distress causes of action, intentional infliction and negligent infliction. See Id. The elements of intentional infliction of emotional distress are as follows: intentionally or recklessly causing severe emotional distress through extreme and outrageous conduct. Yeager, 6 Ohio St.3d 369 at 374,453 N.E.2d 666. Both causes of action require that the emotional distress be severe unless it is accompanied by a contemporaneous physical injury. See Binns v. Fredendall (1987), 32 Ohio St.3d 244, 513 N.E.2d 278.
{¶ 28} In Schultz, the Supreme Court allowed recovery for negligent infliction where a piece of glass fell off defendant's truck, smashed onto the windshield of plaintiff's vehicle and caused plaintiff severe emotional distress, albeit no physical injury. In Paugh, the Supreme Court allowed recovery for negligent infliction where three different defendants crashed their cars into the plaintiff's house and yard and caused her to fear for the safety of her children. These cases stand for the proposition that recovery for negligent infliction is limited "to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." High v. Howard,64 Ohio St.3d 82, 85, 1992-Ohio-125, 592 N.E.2d 818, overruled on other grounds in Gallimore v. Children's Hosp. Med. Ctr., 67 Ohio St.3d 244,1993-Ohio-205, 617 N.E.2d 1052. See, also, Gearing v. Nationwide Ins. Co., 76 Ohio St.3d 34, 40, 1996-Ohio-113, 665 N.E.2d 1115 (stating that parents have no cause of action for negligent infliction of emotional distress against person who molested their child as they were not bystanders to an accident nor did they fear physical consequences to their own persons).
{¶ 29} In Heiner v. Moretuzzo, 73 Ohio St.3d 80, 1995-Ohio-65,652 N.E.2d 664, the Supreme Court denied recovery for negligent infliction where the defendant hospital negligently informed plaintiff that she was HIV-positive. The court followed the holding in Criswell v. Brentwood Hosp. (1989), 49 Ohio App.3d 163, 551 N.E.2d 1315. In Criswell, recovery was denied where the defendant hospital negligently diagnosed a three-year-old with chlamydia and reported possible sexual abuse to the authorities. The Supreme Court noted how the plaintiffs in Schultz and Paugh were faced with a fear of actual physical harm, and the plaintiffs in Criswell and Heiner were merely faced with a fear of a nonexistent physical peril. Heiner, 73 Ohio St.3d at 86, 87. The court specifically stated that "Ohio does not recognize a claim for negligent infliction of severe emotional distress where the distress is caused by the plaintiff's fear of nonexistent physical peril."73 Ohio St.3d at 87.
{¶ 30} At trial, Mrs. Hayes testified that due to the actions of the appellants, she incurred severe mental stress and a prior existing Lupus condition was further aggravated. The only evidence produced at trial as to the aggravating circumstances was her own self-serving testimony. She did not produce any verifiable medical evidence that any damages occurred. She did not proffer any sort of medical evidence, medical bills, hospital reports, or expert evidence, concerning her mental condition or the aggravation of her alleged Lupus condition.
{¶ 31} At trial, Mr. Hayes did not produce any verifiable medical evidence that he had suffered any sort of damages. As with his wife, he did not produce any hospital reports, medical evidence, hospital bills, or expert testimony which would justify the imposition of damages.
{¶ 32} Except as to questions of cause and effect, which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. Darnell v. Eastman (1970), 23 Ohio St.2d 13, 17, Berdyck v. Shinde,66 Ohio St.3d 573, 1993-Ohio-183, 613 N.E.2d 1014; Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 346 N.E.2d 673; Nichols v. Hanzel (1996),110 Ohio App.3d 591, 674 N.E.2d 1237. However, expert opinion testimony is not necessary in a negligence action when the causal relationship is a matter of common knowledge. Wood v. Elzoheary (1983), 11 Ohio App.3d 27,29, 462 N.E.2d 1243.
{¶ 33} In Wood, this court stated as follows:
 {¶ 34} Proof that medical care was reasonably necessary is part of the claimant's burden to show that the liability event proximately caused the claimed damage. Proof that the liability event caused the claimed injury need not include expert opinion testimony when the causal relationship is a matter of common knowledge. Bowling v. Indus. Comm. (1945), 145 Ohio St. 23 [30 Ohio Op. 245, 60 N.E.2d 479], paragraph five of the syllabus; Zalzal v. Scott (1981), 1 Ohio App.3d 151, 152, 440 N.E.2d 64.
{¶ 35} Similarly, proof which describes the medical care that was reasonably necessary for identified injuries may not require expert testimony when that treatment is a matter of common knowledge. The jury may sometimes decide whether specific care was justified for injuries caused by the liability event based on evidence about the nature of the injuries and the nature of the care. Landis v. Pioneer Mut. Cas. Co. (1961), 116 Ohio App. 309 [22 Ohio Op.2d 131, 187 N.E.2d 604]. Id. Cited and followed in Sutherin v. Dimora, 1998 Ohio App. LEXIS 735, *7-8 (Feb. 26, 1998), Cuyahoga App. No. 72351, unreported; Fiorini v. Whiston (1993), 92 Ohio App.3d 419, 427, 635 N.E.2d 1311.
{¶ 36} In the case at hand, the Hayeses contend that they suffered from some form of emotional distress due to the conduct of the appellants. In addition, Mrs. Hayes contends that her Lupus affliction was further aggravated by their conduct. At trial, she provided no other testimony or evidence concerning her Lupus condition or how their conduct was the causal connection of the aggravation of her Lupus. The only evidence presented was her lay testimony as to the physical effects their conduct caused her to suffer. Except as to questions of cause and effect, which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. Darnell v. Eastman (1970), 23 Ohio St.2d 13, 17. In light of the minimal medical evidence presented, this court would be hard pressed to find that Mrs. Hayes' Lupus and the alleged aggravated effects are a matter of common knowledge by lay jurors. Lupus is a chronic (long-lasting) auto immune disease where the immune system, for unknown reasons, becomes hyperactive and attacks normal tissue. These attacks result in inflammation and bring about symptoms. Lupus Foundation of American, http://www.lupus.org/.
{¶ 37} In reviewing the evidence, it is apparent that some type of medical testimony is necessary in order to substantiate the Lupus aggravation. This court does not discredit Mrs. Hayes' testimony as to her claim of emotional trauma, but her Lupus aggravation must be supported by competent credible evidence and testimony verifying the duration and extent of the claimed aggravation and the causal connection between the appellants' actions and Mrs. Hayes' affliction. At trial, Mrs. Hayes simply testified that she was emotionally distraught and her Lupus was aggravated. As noted, there exist several forms of Lupus and related effects. Clearly, medical testimony would have been necessary to establish some causal connection. A lay juror, let alone this court, has no understanding of the symptoms or effects of Lupus. Further, this court is troubled by Mrs. Hayes' failure to produce any medical bills, hospital reports, or any independent verification of damages. As Mrs. Hayes testified to the severe nature of her various afflictions, it would only be reasonable to conclude that she would have sought out some type of medical treatment and obtain some report or bill.
{¶ 38} Like his wife, Mr. Hayes testified that he suffered from emotional distress and anguish due to the nature of the appellants' actions. Unlike his wife, Mr. Hayes does not assert that any prior medical condition was aggravated; he contends that he was caused to suffer severe emotional distress due to the trauma she incurred. Testimony revealed that Mr. Hayes was never directly exposed to the tortious actions of the appellants. Moreover, he was not present at the time of the alleged Klu Klux Klan incident, arguably a most extreme act. Like his wife, Mr. Hayes never sought out or obtained any type of medical evaluation for his condition, nor could he provide any type of medical evidence, hospital report, or medical bills outlining treatment.
{¶ 39} The Hayeses maintained a cause of action for ethnic intimidation and separate causes of action for both negligent infliction of emotional distress and intentional infliction of emotional distress. A plain and ordinary reading of R.C. 2307.70(A) indicates that emotional distress is the injury component for the act of ethnic intimidation. As such, the lower court erred in charging the jury for a separate cause of action on intentional and negligent emotional distress as the recovery for ethnic intimidation is grounded in the resulting emotional distress.
{¶ 40} In accordance with the above stated facts and applicable case law, the Hayeses presented sufficient evidence to withstand a motion for directed verdict on the cause of action for ethnic intimidation.Nevertheless, the lower court erred procedurally in charging the jury on both ethnic intimidation and separately on intentional/negligent emotional distress. The proper procedure for the lower court is to charge the jury on each separate act of ethnic intimidation and, within each incident, the degree of intentional or negligent infliction of emotional distress would thereafter stem. With the proper charge, the jury would be left to decide if each incident breached the standard of care delineated in the ethnic intimidation statute. Accordingly, an analysis of the cause of action for intentional and negligent infliction of emotional distress is hereby rendered moot.
{¶ 41} As such, this court will now address the components of the only remaining cause of action, the covenant of quiet and peaceful enjoyment of property. A covenant of quiet and peaceful enjoyment is breached when the landlord substantially interferes with the beneficial use of the premises by the tenant. Howard v. Simon (1984),18 Ohio App.3d 14, 480 N.E.2d 99. The covenant is breached when the landlord "* * * obstruct[s], interfere[s] with, or take[s] away from the * * * [tenant] in a substantial degree the beneficial use * * *" of the leasehold. Frankel v. Steman (1915), 92 Ohio St. 197, 200. The degree of the impairment required is a question for the finder of fact. Id.
{¶ 42} At trial, the appellees presented sufficient evidence to withstand a motion for directed verdict, or judgment notwithstanding the verdict. As the degree of impairment required is a question for the fact finder, the lower court was correct in denying the appellants' motion for directed verdict, or judgment notwithstanding the verdict.
{¶ 43} Nevertheless, this court is troubled in that the jury awarded Mrs. Hayes $15,000 in compensatory damages for the appellants' breach, but they failed to award Mr. Hayes any type of damages, even though each was a party to the lease. As such, it would seem that an interference on the part of the appellants would be borne equally between the couple. In light of this conflict, this court concludes that the lower court failed to properly instruct the jury in charging on the fourth and final cause of action. Moreover, it is worth noting that an award of $15,000 is substantial in light of the fact that the Hayeses failed to present any type of evidence to justify an award beyond nominal damages.
{¶ 44} Last, in reviewing the evidence admitted at trial, the lower court admitted re-enactment photos which depicted the alleged Klu Klux Klan incident. Moreover, counsel for all parties stipulated to the re-enactment photos being shown to the jury. We note that the appellants failed to object to any of the re-enactment photographs; therefore, in the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable, and fundamental so that it should have been apparent to the trial court without objection. See State v. Tichon, (1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips,74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.
{¶ 45} Accordingly, it is clear that the lower court erred in admitting the re-enactment photos. The prejudice which Heintz and Zaricznyj suffered due to the admission of the photos should have been apparent to the trial court without objection. Further, by failing to object to the photos, counsel for the appellants treads the fine line of ineffective assistance of counsel.
{¶ 46} Although a criminal matter, in State v. Maurer (1984),15 Ohio St.3d 239, 473 N.E.2d 768, the Ohio Supreme Court stated in paragraph 7 of the syllabus:
 {¶ 47} Properly authenticated photographs, * * * are admissible * * * if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number.
{¶ 48} The Court went on to state at pages 264-266:
 {¶ 49} Under Evid.R. 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. See State v. Wilson (1972), 30 Ohio St.2d 199, 203-204 [59 O.O.2d 220, 283 N.E.2d 632]. To be certain, a trial court may reject a photograph, otherwise admissible, due to its inflammatory nature if on balance the prejudice outweighs the relative probative value.
 State v. Woodards (1966), 6 Ohio St.2d 14, 25
[35 O.O.2d 8, 215 N.E.2d 568]. "The trial court has broad discretion in the admission * * * of evidence and unless it had clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere." State v. Hymore (1967), 9 Ohio St.2d 122, 128 [38 O.O.2d 298, 224 N.E.2d 126].
{¶ 50} In the case at hand, the inflammatory and prejudicial nature of the photographs is readily apparent. The lower court erred in not recognizing the prejudicial effect the photographs would have on the jury. Granted, our society continues to struggle with racial and ethnic hatred, but the admission of photographs depicting the Klu Klux Klan on a black couple's porch was clearly prejudicial as evidenced by the disproportionate damage awards. This court can fathom no reason as to why counsel for the appellants would stipulate to admitting photographs re-enacting an alleged Klu Klux Klan incident. The prejudicial nature of the photographs clearly outweighed the probative value.
{¶ 51} As the lower court committed numerous errors during the course of trial, this court's only recourse is to reverse the decision and remand this matter for a new trial on the only remaining causes of action: ethnic intimidation and interference with quiet and peaceful enjoyment of premises, in accordance with the instructions of this court.
Judgment reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees costs herein.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., AND ANNE L. KILBANE, J., CONCUR.
[1] The seven assignments of error are set forth in an appendix to this opinion.
 APPENDIX
The appellants present seven assignments of error for this Court's review.
I. THE GENERAL DAMAGE AWARDS AGAINST DEFENDANTS ZARICZNYJ AND HEINTZ ARE NOT SUPPORTED BY THE EVIDENCE, ARE REPETITIVE AND EXCESSIVE.
II. THE PLAINTIFF FAILED TO INTRODUCE SUFFICIENT, CLEAR AND CONVINCING EVIDENCE TO JUSTIFY THE IMPOSITION OF PUNITIVE DAMAGES AGAINST THE DEFENDANTS.
III. THE PUNITIVE DAMAGES AWARD IN FAVOR OF PLAINTIFFS AND AGAINST BOTH DEFENDANTS ARE EXCESSIVE AND REPETITIVE.
IV. THE JURY VERDICTS FOR BOTH COMPENSATORY AND PUNITIVE DAMAGES IN FAVOR OF THE PLAINTIFF'S CONNIE AND ROSSIE HAYES AND AGAINST MAGDALEN ZARICZNYJ AND RONALD HEINTZ WERE EXCESSIVE AND WERE INFLUENCED BY PASSION OR PREJUDICE AND THEREFORE SHOULD BE REDUCED.
V. THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S COMBINED MOTION FOR NEW TRIAL AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
VI. THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION FOR DIRECTED VERDICT, BASED UPON THE INSUFFICIENCY OF THE EVIDENCE SUPPORTING A COMPENSATORY DAMAGE AWARD FOR COUNT FOUR, INTERFERENCE WITH THE QUIET ENJOYMENT OF THE PREMISES BASED UPON INTERFERENCE WITH A LEASE AGREEMENT.
VII. THE TRIAL COURT ERRED IN FINDING DAMAGES FOR ATTORNEY FEES IN FAVOR OF THE PLAINTIFF AND AGAINST THE DEFENDANTS, WHEN THERE WAS INSUFFICIENT EVIDENTIARY BASIS FOR THE AWARD OF PUNITIVE DAMAGES.