OPINION
{¶ 1} This is an appeal from a summary judgment issued by the Court of Common Pleas of Stark County.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This action was predicated on a claim alleging wrongful discharge in violation of public policy, abuse of process and intentional infliction of emotional distress.
 {¶ 3} Appellant, Terry Holsinger, was an at-will employee of Appellee, Canton Cemetery Association dba North and West Lawn (CCA) from 1992 until April 18, 2003, when his employment was terminated.
 {¶ 4} During his employment, CCA established a 401(K) plan with Unizan Bank. Appellant was eligible to participate in the plan but did not choose to do so.
 {¶ 5} With Appellant's prior accounting experience, other employees participating in the 401(K) asked Appellant to review their statement as to the plan.
 {¶ 6} Appellant requested information about the plan but did not receive such data.
 {¶ 7} About April 15, 2003, one Lou Choffin, now deceased reported to Appellee Cope that Appellant had brought a gun on CCA property.
 {¶ 8} Appellee Cope notified the police who recovered a gun and ammunition from Appellant's vehicle. Appellant was arrested for aggravated menacing. He later pled to a reduced charge of disorderly conduct.
 {¶ 9} Appellant's employment with CCA was terminated. Appellant received a summary of the 401(K) plan with his final check.
 {¶ 10} CCA gave the possession of the gun, thereby raising concerns as to the safe working place, as the reason for the termination.
 {¶ 11} Appellant asserted that he was arrested and subsequently terminated because of his requests to examine the 401(K) documents.
 {¶ 12} Appellant raises three Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 13} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST APPELLANT'S CLAIM OF WRONGFUL TERMINATION. GENUINE ISSUES OF MATERIAL FACT EXIST ON THIS CLAIM. SAID FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS AN ABUSE OF DISCRETION.
 {¶ 14} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST APPELLANT'S CLAIM OF ABUSE OF PROCESS. GENUINE ISSUES OF MATERIAL FACT EXIST ON THIS CLAIM. SAID FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS AN ABUSE OF DISCRETION.
 {¶ 15} "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST APPELLANT'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRIESS [SIC]. GENUINE ISSUES OF MATERIAL FACT EXIST ON THIS CLAIM. SAID FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS AN ABUSE OF DISCRETION."
 {¶ 16} Each of the Assignments asserts that the granting of the Civ.R. 56 motion was against the manifest weight of the evidence and was an abuse of discretion.
 {¶ 17} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
 {¶ 18} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 19} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
 {¶ 20} It is based upon this standard we review Appellant's Assignments of Error.
 I. {¶ 21} The First Assignment states, in effect, that the employment at-will doctrine is inapplicable as a public policy overrides such concept. This public policy, it is argued, arises from the mandatory rights created by E.R.I.S.A. to the 401(K) data which Appellant sought.
 {¶ 22} The Ohio Supreme Court has considered the public policy argument in several cases, among which are: Greeley v. Miami ValleyMaintenance Contrs. Inc. (1990), 49 Ohio St.3d 228, Painter v.Graley (1994), 70 Ohio St.3d 377 and Collins v. Rizkana (1995),73 Ohio St.3d 65.
 {¶ 23} The latter case stated clearly the "at-will" employment doctrine:
 {¶ 24} "* * *a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross or reckless disregard of any employee's rights, and a discharge without cause does not give rise to an action for damages."
 {¶ 25} Painter v. Graley, supra, set forth the specific elements:
 {¶ 26} "(2) to state claim of wrongful discharge, plaintiff must allege facts demonstrating that discharge contravened clear public policy; (3) `clear public policy' is not limited to public policy expressed in statutory enactments, but may also be based on other sources, such as Ohio and United States Constitutions, administrative rules and regulations, and common law."
 {¶ 27} While manifest weight is not usually raised as to a summary judgment ruling as the materials under review must be viewed in a light most favorably to the non-moving party, judgments supported by such data and under such guideline will not be reversed. C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279.
 {¶ 28} Appellant cites E.R.I.S.A. law in support of his conclusion as to the reasons for his firing.
 {¶ 29} Title 29, Chapter 18, Subchapter 1 as to protection of employee benefit rights under E.R.I.S.A. in Sections 1022, et seq., states that such materials as to the plan shall be provided upon written request to participants and beneficiaries.
 {¶ 30} "The term `participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C.A. § 1002.
 {¶ 31} The United States Supreme Court in Firestone Tire and RubberCompany v. Bruch (1989), 489 U.S. 101, also discussed the meaning of "participants" in a case involving former employees in which the Federal District Court had granted summary judgment against such persons because they were not plan participants entitled to disclosure. The Supreme Court stated:
 {¶ 32} "A `participant' entitled to disclosure under § 1024(b)(4) and to damages for failure to disclose under § 1132(c)(1)(B) does not include a person who merely claims to be, but is not, entitled to a plan benefit. The Court of Appeals' interpretation to the contrary strays far from the statutory language, which does not say that all `claimants' are entitled to disclosure; begs the question of who is a `participant'; and renders the § 1002(7) definition of `participant' superfluous. Rather, that definition of a `participant' as `any employee or former employee — who is or may become eligible' for benefits must be naturally read to mean either an employee in, or reasonably expected to be in, currently covered employment, or a former employee who has a reasonable expectation of returning to covered employment or a colorable claim to vested benefits. Moreover, a claimant must have a colorable claim that (1) he will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future in order to establish that he `may be eligible.' This view attributes conventional meanings to the statutory language, since the `may become eligible' phrase clearly encompasses all employees in covered employment and former employees with a colorable claim to vested benefits, but simply does not apply to a former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits. Congress' purpose in enacting the ERISA disclosure provisions-ensuring that the individual participant knows exactly where he stands-will not be thwarted by this natural reading of `participant,' since a rational plan administrator or fiduciary faced with the possibility of $100-a-day penalties under § 1132(c)(1)(B) for failure to disclose would likely opt to provide a claimant with the requested information if there were any doubt that he was a participant, especially since the claimant could be required to pay the reasonable costs of producing the information under § 1024(b)(4) and Department of Labor regulations. 489 U.S. 101, 109 S. Ct. 948."
 {¶ 33} Under such ruling and statutory definition, Appellant, an employee who was eligible to become a plan participant was entitled to disclosure upon written request, which was not done.
 {¶ 34} In addition, if the issue here were the enforcement of E.R.I.S.A. rights, the Federal courts would have jurisdiction due to preemption.
 {¶ 35} The United States Supreme Court held in Ingersoll-Rand Companyv. McLendon (1990), 498 U.S. 133, 111 S.Ct. 478:
 {¶ 36} "We have no difficulty in concluding that the cause of action which the Texas Supreme Court recognized here-a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund-'relate [s] to' an ERISA-covered plan within the meaning of § 514(a), and is therefore preempted.
 {¶ 37} "* * *'The term `State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.'
 {¶ 38} "* * *Even if there were no express preemption in this case, the Texas cause of action would be pre-empted because it conflicts directly with an ERISA cause of action. McClendon's claim falls squarely within the ambit of ERISA § 510, which provides:
 {¶ 39} "`It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan — or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan' — 29 U.S.C. § 1140 (emphasis added)."
 {¶ 40} However, the issue in the case sub judice appears not to be the enforcement of the rights under E.R.I.S.A., but whether a public policy created by E.R.I.S.A. should subordinate the at-will employment concept under Ohio law.
 {¶ 41} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 42} Much stress is placed by Appellant upon his theory that the basis of his termination was by his unwritten demands for 401(K) information and contact by letter with the Department of Labor. However, even if this played a significant role in the firing decision, it is still predicated upon a public policy altering his status of an at-will employee.
 {¶ 43} We find no such clear public policy present even though Appellant is included as a participant entitled upon written request to plan disclosure enforceable in Federal court.
.
 {¶ 44} Therefore, the First Assignment of Error fails.
 II. {¶ 45} The Second Assignment presents a claim for abuse of process.
 {¶ 46} "At common law the tort of `abuse of process' did exist. It differed from malicious prosecution. However, it also differed from the tort called `malicious use of process,' which actually is but one type or classification of malicious prosecution. 1 American Jurisprudence 2d 250 et seq.; 72 C.J.S. Process s 119 et seq., 1187 et seq.; 14, A.L.R.2d 267, 322; Prosser, supra, 870-875." Avco Delta Corp. of Ohio v.Walker (1969), 22 Ohio App.2d 61.
 {¶ 47} "In order to establish a claim of abuse of process, a plaintiff must satisfy three elements: `(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.' Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294, 298, 626 N.E.2d 115, 118."
 {¶ 48} "[A]buse of process' differs from `malicious prosecution' in that the former connotes the use of process properly initiated for improper purposes, while the latter relates to the malicious initiation of a lawsuit which one has no reasonable chance of winning. ClermontEnvironmental Reclamation Co. v. Hancock (1984), 16 Ohio App.3d 9, 11,16 OBR 9, 12, 474 N.E.2d 357, 362.
 {¶ 49} "In an abuse of process case, `[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.' Prosser Keeton on Torts (5 Ed.1984) 898, Section 121. Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order. Robb v. Chargrin Lagoons Yacht Club, Inc. (1996),75 Ohio St.3d 264."
 {¶ 50} Since, as we have determined in response to the First Assignment that no clear public policy exists to alter the status of Appellant as an employee at will which entitled CCA to terminate his employment without any specific reason, the argument that the criminal charge was initiated to create sufficient reason for his termination is without merit.
 {¶ 51} As stated in Prosser Keeton, The Law of Torts (5th Ed. 1984):
 {¶ 52} "[t]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."
 {¶ 53} The second element of abuse of process has not been met as no ulterior purpose was involved as argued by Appellant.
 {¶ 54} We also are puzzled as to why Appellant argues that a rule is required to prohibit guns being brought to the workplace although further comment is not required.
 {¶ 55} The Second Assignment is denied.
 III. {¶ 56} The Third Assignment raises the claim of intentional infliction of emotional distress.
 {¶ 57} In Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, the Ohio Supreme Court held that `[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress.' Id. at syllabus paragraph one. With respect to the requirement that the conduct alleged be extreme and outrageous, the Court explained:
 {¶ 58} "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Id. at 374-5."
 {¶ 59} As noted by the trial court, the required extent of serious emotional distress was stated by the Supreme Court in Paugh v.Hanks (1983), 6 Ohio St.3d 72F, even though such case involved negligent rather than intentional inflection of emotional distress:
 {¶ 60} "Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case."
 {¶ 61} As noted by Judge Lioi in referencing Appellant's deposition responses, no serious emotional effects were incurred.
 {¶ 62} Also, we fail to find sufficient outrageous conduct warranting this claim.
 {¶ 63} The Third Assignment is also rejected.
 {¶ 64} The judgment of the Stark County Court of Common Pleas is affirmed.
Boggins, J., Wise, J. concurs
Hoffman, P.J. concurs separately.